Chrisman vs. Carney.

## CHRISMAN VS. CARNEY.

1. VENUE: *Change of in civil cases.*

The provisions for change of venue contained in section 13, chapter 177, Gould's Digest, were repealed by the adoption of the Civil Code in 1868. .

2. PLEADING: *Forms of action.*

Forms of action being abolished, the actions of trespass and case may be joined; but the requisites to constitute the injury, and the proof to sustain it, are the same as formerly.

3. FALSE IMPRISONMENT: *Malice, not necessary to be proven.*

In an action for false imprisonment it is not necessary to show malice, if the arrest was unlawful. One who participates in, or instigates or encourages an unlawful arrest, is liable, however.pure his motives.

4. MALICIOUS PROSECUTION: *Malice—Probable cause.*

Both malice and want of probable cause must exist to sustain an action for malicious prosecution. Probable cause is a mixed question of law and fact, and may usually be left by the court to the jury, and the mere innocence of the party accused will not sustain the action if the circumstances be such as to induce the prosecutor to suppose the party prosecuted to be guilty.

5. AGENT: *Officer, not, of prosecutor—declarations of.*

An officer executing process is not the agent of the prosecutor, so as to make his declarations, even when part of the *res gestæ,* bind the prosecutor; nor can his declarations be used to prove his agency, or that there was a conspiracy between him and the prosecutor to abuse the process of the law.

6. CHIEF OF POLICE: *Of Cities of the first class; Power to arrest in other counties.*

Under the facts of this case (see the Op.) the court is of the opinion that the Chief of Police of the City of Little Rock may pursue a person charged with crime in said city, and arrest him in another county, within a few days.

7. EVIDENCE: *Telegrams.*

Telegrams between the parties, and from the defendant to a third party, in regard to the transactions resulting in the plaintiff's arrest, are admissible in an action for false imprisonment, as a part of the *res gestae,* for the purpose of connecting the defendant with the arrest.

Chrisman vs. Carney.

8. ————: *Of probable cause.*

Where the question at issue was probable cause the prosecutor had for believing the person prosecuted guilty of the crime of false pretense, false representations made to some one else, without the design that they should reach the prosecutor and influence his conduct, are inadmissible.

APPEAL from *White* Circuit Court.

Hon. J. N. CYPERT, Circuit Judge.

*Coody, Clark & Williams* and *Benjamin & Barnes* for appellants.

*B. D. Turner* and *J. M. Moore, contra.*

EAKIN, J.:

Chrisman, a resident of Pulaski County, keeping a hotel at Little Rock, was sued and served with process in White County. The complaint contained two paragraphs.

The first was for *false imprisonment* in causing the plaintiff to be arrested without any authority of warrant, or process, or oath made before any proper officer, and without reasonable cause to believe that he had been guilty of any crime.

The second paragraph was, in effect, for malicious prosecution, charging that defendant falsely, maliciously, and without probable cause, procured a warrant from a justice of the peace of Pulaski County against said plaintiff, which was delivered to the Chief of Police of Little Rock, upon which he was arrested in White County, brought to Little Rock, and detained by defendant, at his hotel, until he gave up property to satisfy defendant's claim.

The answer denies malice or want of probable cause generally, and, as to the first count, that he caused or procured the arrest of complainant, otherwise than by giving information to the Chief of Police of the conduct of complainant.

As to the second, it denies that he caused the arrest of complainant falsely, maliciously and without reasonable or probable cause, or for the purpose of extorting from him money or

property, and proceeds to set forth the facts which afforded the grounds of the prosecution; and the circumstances under which it was made.

Upon these issues the cause was tried by a jury, which found for the complainant, and assessed his damages at $1300. There was a motion for a new trial. Bill of exceptions and appeal. The grounds of the motion will be considered so far as they seem important. The bill of exceptions shows that, by agreement, all exceptions were reserved, which, by virtue of section 4694 of Gantt's Digest, superseded the necessity of taking them upon the several rulings when made. The bill also makes proper reference to the motion for a new trial, copied in another part of the record.

Before trial, the defendant moved to transfer the cause to the county of his residence. The refusal of the court to do this is made the first ground of the motion. The motion was based on the act of November 30, 1874. (See Gould's Digest, ch. 177, sec. 13.) The practice, under this act, had been infrequent in the profession. When the Code of Civil Practice of 1868 was adopted, the Legislature seems to have intended to cover the whole subject of venue in civil cases, prescribing definitely in what counties actions might be brought, and under what circumstances the venue might be changed, omitting the provision in the act of 1840. The rule of construction applies, which, in such cases, implies an intention to repeal provisions not brought forward and repeated.

This becomes more probable from the consideration that the Code provisions having become confused by subsequent legislation, a new act was passed in 1875, which also failed to incorporate the provisions of the act of 1840. The Circuit Judge did not err in the refusal to transfer.

A brief outline of the facts may be necessary to a clear understanding of the points arising upon the trial, and presented by the other grounds of the motion.

It appears, without controversy, that complainant, W. E. Carney, with his nephew, W. E. Carney, Jr., came to Little Rock about the 1st of April, 1875, staid a short time at defendant's hotel, paid their bills, and went to a private boarding house. Afterwards complainant came back near the first of May, and representing himself to defendant as a man of property, and as having money on deposit in bank and valuable jewelry in his baggage, contracted for board for himself and nephew. That his attention was called to the notice posted in the office that boarders without baggage must pay in advance; that he asserted that he had valuable baggage in town, and directed his nephew to have it brought in, and afterwards said, in excuse for the delay, that part of his clothing was out to wash, and he was waiting to bring it all in together; that his representations and pretences were false; that, after a few days, complainant and his nephew left the hotel, and the city, without paying, and without the consent of defendant; that defendant applied to the Chief of Police, representing the circumstances and asking his aid; that, after discovering the place to which complainant had gone, the Chief of Police (Blocher) telegraphed the Sheriff of White County to arrest him and his nephew, which was done. The Sheriff afterwards, doubting his authority, released them. Defendant then made affidavit before a justice of the peace charging complainant and his nephew with having obtained *board* from him under false pretences. Before doing so, he laid the facts before the justice, who advised him that they would support a prosecution. The warrant was for obtaining *money* under false pretences. The defendant called the attention of the justice to the discrepancy, but was advised that it was all the same. This warrant, addressed "to any sheriff, constable, etc., of the State of Arkansas," as provided in section 1669 of Gantt's Digest, and otherwise in due form, was placed by the

Chrisman vs. Carney.

defendant in Blocher's hands, who proceeded to Searcy, in White County, where complainant and his nephews were, arrested them, and brought them to Little Rock. They were taken as felons, and at first handcuffed, but afterwards treated leniently, and without any unnecessary severity. Arriving at Little Rock in the night, they were taken by Blocher, whether by their request or on his own motion, does not clearly appear, to defendant's hotel, where they were furnished a room by defendant's hotel clerk, and remained without any restraint until next morning. When defendant met them next morning, he spoke to them as prisoners in his charge, and refused to assent to their leaving before Blocher should come round to take them. In the altercation and discussion between them, it was proposed and agreed that complainants should make Chrisman secure for his bill and expenses, give him a lien for payment on a chest of tools, and that defendant (Chrisman), on his part, should dismiss the prosecution, if the officer having the warrant would consent. Writings were signed to that effect. Blocher was advised of it, and the warrant was never returned. Afterwards this suit was brought for damages.

The issues raised by the pleadings, to which these facts and circumstances must be applied were, on the first count, did Chrisman cause or procure complainant to be falsely imprisoned? And on the second, did Chrisman institute a malicious prosecution against complainant, without probable cause? The first was at common law an action of trespass, and the other an action on the case. The forms of action being now abolished, they may be joined under the class of injuries to the person; but the requisites to constitute the injury, and the proof necessary to be made to sustain either paragraph of the complaint, are the same as formerly.

The principles which govern these issues have long been well defined, and have been recently announced by this court,

in several well considered cases, reported in 32 Ark. (See the cases of *Lemay* v. *Williams*, p. 166; *Akin* v. *Newell*, p. 605; *Lavender* v. *Hodgens*, p. 763.)

With regard to the first issue, if the arrest was unlawful, no malice need be shown. The defendant, if he participated in it, or instigated or encouraged it, is liable for the false imprisonment, however pure his motives may have been. The arrest, however, was not necessarily unlawful because made without warrant. A peace officer or a private person may make an arrest without warrant when he "has reasonable grounds for believing that the person arrested had committed a felony." (Gantt's Digest, sections 1678 and 1679.

But where, as in the second case, the arrest has been made under a warrant in due form, the officer is entirely protected, however groundless the prosecution, and the liability of the prosecutor is upon the case for malicious prosecution, and not in trespass for false imprisonment. No imprisonment by virtue of a legal warrant in due form is false imprisonment. To have procured the warrant from malice and without probable cause is a distinct civil injury. It must be charged and shown by proof that both malice and want of probable cause existed. If there be probable cause, no degree of malice will be sufficient to sustain the action. If there be no probable cause, then malice must be shown also; and in estimating malice the absence of probable cause is only a matter of evidence to be considered, with other circumstances, in determining whether the prosecutor was prompted, in making the charge, by private motives or considerations of the public good. In other words, if there be probable cause, the law will not inquire into motives. "In general," says Mr. Chitty, "*no action whatever* can be supported for any act, however erroneous, if expressly sanctioned by the judgment or direction of one of the superior courts at

20

Westminster; or even by an inferior magistrate acting within the scope of his jurisdiction." (Vol. 1, p. 181.) And again (on p. 186), " no person who acts upon a regular writ can be liable to this action (trespass), however malicious his conduct, but case for the malicious motive and want of probable cause for the proceeding is the only sustainable form of action." Both elements must combine to make the cause of action complete. And to like effect Mr. Greenleaf, in his work on Evidence (Vol. 2, sec. 454), says: "The want of probable cause is a material averment, and though negative in its form and character, it must be proved by the plaintiff by some affirmative evidence." "It is independent of malicious motive, and cannot be inferred as a necessary consequence from any degree of malice which may be shown;" and this probable cause is a mixed question of law and of fact, usually so blended together that the judge may leave the whole question to a jury. (See Greenleaf on Evidence, vol. 2, sec. 454.) Nor will the mere innocence of the party accused sustain the action if the circumstances were such as to induce the prosecutor to suppose the person proceeded against to be guilty. "For," as Blackstone says, " it would be a very great discouragement to the public justice of the kingdom if prosecutors who had a tolerable ground of suspicion were liable to be sued at law whenever their indictments miscarried;" and therefore " any probable cause for preferring it is sufficient to justify it." (See Book III, p. 126–7.) And if there be such probable cause, it is no objection in law (however repulsive it may be to our sentiment of patriotism and dignity of character) that the prosecutor was impelled by the more sordid motives of recovering his property, or enforcing a civil right. The law does not undertake to compel—however society may respect—a nice sense of honor, by inflicting a pecuniary liability upon a person for what he might lawfully

Chrisman vs. Carney.

and ought to do, because his motives were selfish. Society has indeed been compelled more or less to avail itself of the energies which selfish motives prompt. By the English law, as modified by statute and adopted here (although not so at common law), persons were encouraged to prosecute offenses against property by the hope of restoration. It was especially so provided in the case of larceny by statute of 21 Henry VIII., ch. II. The policy has been enlarged in later times in England, and many similar acts of more extensive scope were passed in the reigns of the Georges Second, Third, and Fourth, holding out to prosecutors the prospect of recovery of their civil rights. (See citations in IV. Black. Com. 361-2.) The policy of such laws for the protection of society is their sole, but sufficient, vindication, and we must in this view of them repress the natural impulse to hold prosecutions on probable cause to be malicious in law merely because the prosecutor was impelled by the sole motive of recovering money or property.

It yet remains, before returning to the grounds of motion for a new trial, to rule upon the power of the Chief of Police to execute the warrant in White County. A sheriff cannot execute a process outside of his own county, as held in this court in *Blevins* v. *State*, 31 Ark., 153.

The powers of the Chief of Police of Little Rock, which is a first-class city, are somewhat more extensive, as defined by the act of March 3, 1873, sec. 52. He is one of the officers to whom the warrant is directed in the legally prescribed form under sec. 1663 of Gantt's Digest. He may by himself or deputies execute all process directed to him. He shall have like powers with sheriffs in similar cases. Amongst other things, he shall have power to pursue or arrest any person fleeing from justice in any part of the State; and to receive and execute any proper authority for arrest and detention of

criminals fleeing or escaping from any other place or State. What constitutes a fleeing from justice depends very much upon particular circumstances. But under the facts as they appear in the case before us, the court is of the opinion that the Chief of Police, for a crime committed in Pulaski County, and the City of Little Rock, might well pursue and arrest the persons charged, within a few days. That the complainant had told Chrisman he meant to go to Searcy before he left, does not alter the case, as Chrisman might well have supposed he meant to make good his representations and pay his bill before leaving.

Applying these principles, we will notice such of the grounds for a new trial as may seem important.

The court, against appellant's objections, admitted certain telegrams of May the 6th, numbered from one to eight; these passed, some of them, between Chrisman and a Mr. Kellum, concerning Chrisman's debt; one from Carney to Chrisman, offering to pay a certain small amount and no more; and some from Blocher to the Sheriff, directing the arrest. At that time no warrant seems to have been sworn out.

The evidence, although it does not positively show that Chrisman directed the arrest, so connects him with the proceedings in his interest as to justify the admission of them as parts of the *res gestae* to be considered by the jury, as tending to prove that the arrest made by the Sheriff of White County was instigated by Chrisman. Although they tend to show Chrisman's agency in the arrest, taken in connection with other testimony, and that his principal motive was the collection of the claim, they have no bearing to show want of probable cause to believe the alleged crime had been committed. They were applicable to the first count alone.

It is objected, in the third ground of the motion, that the court allowed declarations made by Blocher, in the absence of

Chrisman, during the proceedings on the warrant, to go to the jury to show that Blocher was employed by Chrisman in making the arrest, and was to be paid by him therefor. This was error. A police officer in executing a warrant acts officially and on his own responsibility. He is not the agent of the prosecution so as to make his declarations, even when part of the *res gestae*, bind the prosecutor, and his declarations cannot be taken to prove his agency, or that there was a conspiracy between them to abuse the process of the law. Besides, they were historical, and no part of the actual transactions. They referred to what Chrisman had done in promising to pay him money, and were only hearsay. Besides, there was nothing to show an abuse of process, unless it were in handcuffing the complainant. That may have been an unnecessary precaution, harsh and humiliating, but we cannot say it transcended the power of the officer when done with a view to security. If Chrisman really had probable cause to believe complainant guilty of the crime, and put the warrant in Blocher's hands, he would not be rendered liable in this action by offering a reward to the officer to stimulate his exertions.

A number of questions were put by defendant to a witness, A. T. Carroll, which were excluded by the court. This is made a ground for the motion for a new trial. An examination of these questions shows that the general purport and design of them was to prove divers communications made to witness by complainant about the time of the supposed false representations to Chrisman, and that they were communicated to Chrisman. The question at issue was the probable cause Chrisman had for believing that the complainant had procured his board by false and fraudulent representations to himself. To constitute them such they should have been made to Chrisman himself directly, or through some one else with the intention and design that they should reach Chrisman and influence

his conduct.   He would have had no right to place any reliance upon light and boastful representations made in general conversations.   They would not be criminal if false, and to have admitted them would have given to the evidence entirely too wide a range.

The court gave for the plaintiff fifteen instructions, as asked; which is made a ground of motion for a new trial. They are too long for convenient repetition in full.   Their tenor may be considered as a whole.

They correctly lay down the law of false pretense, what is necessary to constitute the crime, and the degree of probability which must have existed in the mind of defendant to justify him in making the accusation and procuring the warrant.   The law as to the measure of damages is also correctly stated. But one error runs through and pervades the whole of them, and is made prominent by frequent repetition.   It is impressed upon the jury that if the prosecution was instituted solely for the purpose of collecting a debt or extorting money, and was conducted for that purpose until the object was attained and then dropped, the defendant is liable, notwithstanding he may have had probable cause to believe the charge was true.   This is not the law.   The existence of probable cause is of itself alone a complete and entire defense to all actions for conduct which a citizen may pursue upon probable cause, whether it be to swear out a warrant or arrest without one.   The interest which society has in the enforcement of the criminal laws requires this rule.   It is wholly independent of any regard for the prosecution.   If there be no reasonable grounds nor probable cause for his proceedings, then, and not before, the question of malice becomes important, and his whole conduct may be taken into account; and if, having instituted a prosecution with probable cause and on reasonable grounds, he should convert it into a means of extorting money or property, and

Chrisman vs. Carney.

cause it to be dismissed after attaining his wicked ends, he would become himself a criminal and stand amenable to punishment for compounding a felony. But where probable cause existed when the prosecution begun, this action cannot be maintained. The instructions as drawn took from the jury the consideration of probable cause, provided they should believe the defendant had no other object in view than to collect his debt. Whilst the court holds this to be error, the occasion should not pass for saying that such prosecutions should be jealously watched. It is not well to prostitute the criminal laws of the State for the collection of debts, thereby obtaining, as unscrupulous creditors are wont to do, all the harsh coercive benefits of imprisonment for debt, superadded to the moral terror which a debtor may feel for his good name. The practice is utterly detestable in the sight of every fair-minded man and woman, and it well befits a jury, when such motives are apparent, to see well to it that the belief of the prosecutor was really upon grounds reasonable and probable, and not simulated for the purpose. But if they be found so, the law exonerates him from civil liability.

We have only to add that the refusal of instructions asked by the defendant, and the giving of those upon the court's own motion, whilst correct in the main upon other points, are all infected with the same error. They insist that the defendant cannot excuse himself for the prosecution unless it was undertaken in good faith and for the public good. This is the law only where there is want of probable cause, and where the question is one of malice; and it should have been so limited by the instructions that the jury could apply it intelligently.

If the verdict had been rendered under proper instructions and a due consideration of all the facts, it would not be so excessive as to evince passion, prejudice, or corruption on the part of the jury; and this court would not interfere on that account.

Many other questions of law arise upon the record, but it is inconvenient to notice them *seriatim*, and as they come within the bearing of the principles already herein announced, will doubtless be correctly ruled on a new trial.

For the errors above indicated, let the judgment be reversed and the cause remanded, with instructions to grant a new trial.