AMERICAN CASUALTY COMPANY *v.* RIGHTOR.

4-8407                                                    207 S. W. 2d 736

Opinion delivered February 2, 1948.

*Hal B. Mixon,* for appellant.

*Dinning & Dinning,* for appellee.

HOLT, J.   This suit was begun November 5, 1946, by appellees, Jennie P. Rightor and Josephine Thompson, against the American Casualty Company, appellant, to

recover $808 for attorney's fees incurred by appellees in the defense of an action brought against them by the administrator of the estate of Louis Warren Tilghman, deceased. They also ask for 12 per cent. penalty and attorney's fees.

Appellees alleged in their complaint that they were engaged in farming operations near Helena and owned and operated a 1940 1½-ton International truck; that appellant, company, on July 22, 1944, issued to them its policy of insurance whereby it agreed to insure appellees against loss or damage caused by its operation and that appellant would, at its expense, defend any suit brought against appellees for damages resulting from its operation; that on February 23, 1945, while said truck was being operated by appellees, it was caused to strike and kill Warren Tilghman, a 7-year-old child. They further alleged proper notice of the action and the filing of the suit was given to appellant, wherein damages were sought in the amount of $10,000; that although requested to defend, appellant repudiated its contract of insurance and refused to assume the defense of the action; that appellees were compelled to employ counsel and defend the action which was submitted to a jury in April, 1946, and a verdict returned in favor of appellees; that they incurred an expense of $808 in defending the suit.

Their prayer was for judgment against appellant for damages for its failure to defend the action.

Appellant's answer denied generally the allegations of the complaint and alleged the affirmative defense that the policy of insurance in question "provided that it should not apply while the automobile was being used for the towing of any trailer or semitrailer not covered by like insurance with the company," and that the accident alleged in appellees' complaint occurred at a time when the truck described in the policy was towing a semitrailer, not insured by the company.

By agreement, the cause was submitted to the court, sitting as a jury, and from a judgment in favor of appellees is this appeal.

For reversal, appellant says: "The risk of loss was one specifically excluded by the terms of the policy contract itself and the coverage of the policy cannot be extended by the doctrine of estoppel based upon acts of the insurer's agent."

The insurance contract in question provides: "Item 3. The insurance afforded is only with respect to such and so many of the following coverages as are indicated by a specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of the policy, having reference thereto.

Coverages.　　　　Limits of Liability.　　　Premiums.

(Show separately for each auto.)

A—Bodily injury liability $10,000 each person.
　$20,000 each accident_____$35.20

B—Property damage liability $5,000 each accident..$10.90

C—Medical payments _____

　　　Total premium_____$46.10

"Item 4. Description of the Automobile. Yr. of Model. Trade name and model. Body type; Truck load capacity or factory gross weight; Tank gallonage capacity; or Bus Seating capacity—1940 International 1½-ton truck; Serial number 23525; Motor number 33846. . . . American Casualty Company of Reading, Pennsylvania, agrees with the insured named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

"1. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and

arising out of the ownership, maintenance or use of the automobile.''

Under section 11, the company agreed with assured to ''defend in his name and behalf any suit against the insured alleging such bodily injury, sickness, disease, including death resulting therefrom . . . even if such suit is groundless, false or fraudulent.''

Under section IV, the contract provides: ''Except when specifically stated to the contrary, the word 'automobile' whenever used in this policy shall mean the motor vehicle, trailer or semitrailer described in this policy. The word 'trailer' shall include semitrailer.''

Under the heading, ''Exclusions,'' it is provided: ''This policy does not apply . . . (c) under coverages A and B, while the automobile is used for the towing of any trailer owned or hired by the named insured and not covered by like insurance in the company.''

The great preponderance of, if not all, the evidence showed that W. D. Knoble, who wrote the policy in question, was at the time of its issuance, the general agent of appellant with full power to solicit, issue and deliver the policy to appellees.

Knoble testified that he was connected with the Walker Insurance & Realty Company, which represented a number of insurance companies including appellant company; that he knew Dr. Rightor and the equipment used by him in managing appellees' farms, which included a truck with trailer attached; that Dr. Rightor directed him to cover that equipment, truck and trailer, and that he issued and delivered the policy of insurance in question here to appellees intending to cover the truck and trailer, but by oversight the trailer was not mentioned in the policy. He further testified: ' ''Q. How long had this equipment been covered by this policy, or a similar policy, from your office by a different company? A. The equipment was purchased in 1940. Q. Then the equipment had been covered by a policy from your office since 1940? A. Yes, sir. Q. What was, in fact, a proper description of the equipment you undertook to insure

under the policy? A. The proper description of the property I undertook to insure was a .ton and a half International truck with a trailer attached. Q. Has the premium been paid on it? A. The premium would have been $4.75 more if the exact trailer had been described. Q. You knew of the trailer? A. Yes, sir, it was my intention to insure the complete equipment. Q. If you had described the equipment properly and submitted a statement to Dr. Rightor would the premium have been paid? A. Yes, sir. Q. He paid what was required? A. Yes, sir. Q. It was your intention to insure this particular equipment? A. Yes, sir. Q. You didn't have any instructions from Dr. Rightor or any other person to omit the trailer or any other equipment for the purpose of decreasing the premium? A. No, sir. Q. Have you seen this particular truck and trailer going up and down the streets? A. I have, yes, sir. Q. Did you ever inspect the equipment? A. Yes, sir, on the day of the issuance of the policy. . . .

"Q. The endorsement providing for the semitrailer was left off this policy by an oversight or a mistake? A. By an oversight, or otherwise we intended to insure it. . . . Q. It was merely by reason of an oversight that it was omitted? A. Yes, sir. Q. Previously you had been insuring it without exception? A. Yes, sir. Q. You intended to do it in this case? A. Yes, sir. Q. You knew you were expected to do so by Dr. Rightor? A. Yes, sir. Q. You are familiar with the character of equipment that was being used at the time of the accident? A. Yes, sir. . . . Q. Your agency has authority to issue these policies? A. Yes, sir. Q. It is a general agency in that respect? A. Yes, sir."

It thus appears that Knoble knew that both the truck and trailer were to be covered by the policy and that he intended to insure both. The evidence is undisputed that a previous agreement existed between Knoble and appellees that this truck and trailer be kept insured from year to year, and pursuant to this agreement Knoble, for approximately four years prior to the issuance of the policy here, had carried in another company, the same risk intended to be assumed by the present policy, but in 1944 insurance was changed to appellant company, and by an

oversight, the property insured here was described as a truck instead of a truck and semitrailer, which was intended to be covered.

By the general agent's frank admissions he inspected the equipment intended to be insured. He had previously written the risk and was familiar with physical facts relating to the machine—that is, its general purpose and proportions. Whether a truck, truck with trailer, or truck with semitrailer, the fact remains that Knoble intended to protect appellees from liability occasioned by its operation. The *entity* was in his presence. A mere error in describing this equipment when writing the policy cannot relieve from liability the company that accepted a premium (though slightly less than the standard charge) to insure it, believing it had, and causing appellees to think so.

On the evidence presented by this record, an oral contract was established by the parties to insure the trailer along with the truck described in the written contract, and we treat the pleadings as amended to conform to the proof.

"According to a uniform holding of this court, the trial court's findings and judgment will not be reversed, when they are in conformity to the evidence in the case, notwithstanding the pleadings fall short of the facts in evidence, for in such case the pleadings will be considered as amended to suit the facts." *Davis* v. *Goodman,* 62 Ark. 262, 35 S. W. 231.

The acts, in this connection, of the general agent, Knoble, which were within the scope of his authority as general agent, were the acts of his company, appellant, his principal, and were binding on appellant. "Where an agent does anything within the real or apparent scope of his authority it is as much the act of the principal as if done by the principal himself." *Allemania Fire Ins. Co.* v. *Zweng, Trustee,* 127 Ark. 141, 191 S. W. 903.

"This court has held that an agent authorized to issue policies of fire insurance may make a valid parol executory contract to insure or to issue a policy of insur-

ance. *King* v. *Cox*, 63 Ark. 204, 37 S. W. 877, *and Aetna Ins. Co.* v, *Short*, 124 Ark. 505, 187 S. W. 657." *New Hampshire Fire Insurance Company* v. *Walker*, 178 Ark. 319, 11 S. W. 2d 772.

The applicable rule is stated in 29 American Jurisprudence, p. 151, § 135, as follows: "It is generally held that where otherwise valid, oral contracts of or for insurance entered into by general agents or by duly authorized agents acting in such respect within the apparent or ostensible scope of their authority are binding on the insurance company which they represent. . . . An agent authorized to make the necessary surveys, and negotiate and conclude all the terms of the contract, and to fill up and countersign policies, may bind his company by a parol contract to issue a policy."

Finding no error, the judgment is affirmed.