CONSTITUTION LIFE INSURANCE CO. *v.*
M. D. THOMPSON & SON, INC., A CORPORATION

5-5622                   475 S.W. 2d 165

Opinion delivered January 17, 1972

*Hodges, Hodges & Hodges,* for appellant.

*Pickens, Pickens & Boyce,* for appellee.

CONLEY BYRD, Justice. The issue on this appeal is when appellant Constitution Life Insurance Company became liable on a $10,000 substandard risk life insurance contract between it and Vance M. Thompson. Appellee M. D. Thompson & Son, Inc., is the beneficiary. The trial court held that appellant was liable from the date Vance Thompson accepted appellant's counteroffer and paid the premium. On appeal appellant contends that it is not liable because Thompson died before the policy was issued.

Buddy Hackett, appellant's soliciting agent, testified that Vance Thompson carried a substantial amount of term life insurance that was either terminated or reduced in half upon reaching age 70. Application was made to Buddy Hackett for $100,000 term life insurance.

Hackett, through Harry Grimes, appellant's general agent, determined that Thompson's request for the insurance should be made to appellant in two $50,000 applications. The first $50,000 application was approved and a policy was issued. The second $50,000 application was made within a matter of days after issuance of the first policy and with the understanding of all parties that appellant would have to shop the application for reinsurance. Hackett received a telephone call about noon on March 14th from Jerry Weiner, the director of appellant's substandard division of life sales. In answer to a question as to what Jerry Weiner told him, Hackett testified:

"He said, 'On that Thompson case, we can't go $50,000,' and that was the $50,000 policy that we applied for; he said, 'We will go $10,000.' And I said, 'Well, give me a policy number so I can call Mr. Thompson and put it in force.' And he said, 'I don't have the policy number. I will have Jean call you back.' And I said, 'Well, what do you think about some additional coverage on Mr. Thompson at a later date?' And he said, 'Well, that's all that the Company that we participate with wants at this time. You can give us another try at it in about six months.' "

Within an hour, Jean Gorski, the assistant director of life sales, called and gave Hackett the policy number and the semiannual premium amount. Hackett thereafter called Thompson who agreed to accept the $10,000 coverage and mailed a cashier's check for the premium to Hackett on which the policy number was stated. Hackett delivered the premium to Harry Grimes on Saturday the 15th. Thompson was killed in a car accident on Sunday the 16th.

Harry Grimes verified that he had received the cashier's check for the premium on the 15th. When he learned of Thompson's death, he notified appellant and received instructions to return the policy upon receipt by him because the policy was not issued until the 17th and thus not in force. He also returned the cashier's

check for the premium to the personal representative of Thompson's estate, as directed by appellant.

Jean Gorski testified that she was the assistant to the Director of Life Sales in the Agency Department of Constitution Life. She relayed the information to Hackett giving the policy number and the semiannual premium. The $50,000 application was changed to $10,000 and all the signatures blocked out as it would be necessary to obtain new signatures. The policy was not issued until the 17th and was mailed by her on the 18th. On cross-examination Jean Gorski testified that at the time she gave Hackett the policy number and the premium amount all judgments had been made and appellant had agreed to issue the policy.

Virjean Helmer, the assistant manager of Bankers Life & Casualty, one of the many insurance companies owned by John McArthur, testified that she handled all of the clerical procedures that take part in the issuance of some 4000 policies a day for seven companies which included appellant. From the records kept in her office she verified that the policy was ready for issue on March 14, that on that date Gorski had given the "table rate 5" to the broker, Mr. Hackett, and that the policy was issued on March 17 "C. O. D., out for signature." On cross-examination she testified that appellant decided to issue the policy on the 14th and the only thing to be done thereafter was mechanical.

For reversal of the judgment holding that the policy was in effect on the date of Thompson's death, appellant relies upon *Dove* v. *Arkansas National Life Insurance Company*, 238 Ark. 1033, 386 S. W. 2d 495 (1965), and *Employers Protective Life Assurance Company* v. *Gatlin*, 246 Ark. 244, 437 S. W. 2d 811 (1969). In the *Dove* case both the application and the binder receipt upon which the insured relied provided that the insurance would become effective from the date of approval by the Company's authorized agents. Since the applicant died before such approval there was no insurance. In the *Gatlin* case, Gatlin made application to a soliciting agent for hospitalization insurance on an application that provided that the insurance policy would

not be effective until the policy was issued. Notwithstanding that the soliciting agent told him it would be effective from the date of the receipt for the premium, we held that the soliciting agent had no authority to waive the terms of the application and that no insurance was in effect until the policy was issued.

We find that neither *Dove* nor *Gatlin* is controlling here. As we view the record Thompson made an application upon a form prepared by appellant for $50,000 insurance. This application provided that the contract or policy applied for would not be effective until it was issued by the company and duly executed by the company's president and secretary. However appellant did not accept Thompson's offer but tendered an oral counteroffer to issue a $10,000 policy that could be placed into effect upon the payment of the semiannual premium. Appellant's counteroffer was accepted by Thompson and the premium was promptly paid to appellant's general agent. Hackett's testimony relative to the oral counteroffer and its acceptance is not only uncontradicted but substantiated by appellant's own records. In *American Casualty Co.* v. *Rightor,* 212 Ark. 779, 207 S. W. 2d 736 (1948), we pointed out that oral contracts entered into by duly authorized agents acting in the apparent or ostensible scope of their authority are binding on the insurance company.

To avoid the oral agreement, appellant contends that Hackett was no more than a soliciting agent; that Thompson did not consent to the issuance of the policy in writing as required by Ark. Stat. Ann. § 66-3206 (Repl. 1966); and that by Ark. Stat. Ann. § 66-3219 (Repl. 1966), temporary life insurance is prohibited. We find no merit in any of the arguments.

In the first place Hackett made no representations except those authorized by personnel in appellant's home office. Thus there is no reliance upon the representation of a soliciting agent but upon the representations of appellant's home office personnel.

The proof shows that not only did Vance Thompson make the original application in writing for a $50,-

000 policy but that he consented to the issuance of the $10,000 policy by writing his personal check to the Bank of McCrory for the cashier's check upon which he caused the policy number to be noted and the cashier's check mailed to the agent. The writing of his personal check alone would appear to be a sufficient consent in writing to comply with Ark. Stat. Ann. § 66-3206 (Repl. 1966).

Appellant's third argument is that temporary life insurance or a binder therefor is prohibited by Ark. Stat. Ann. § 66-3219. However this statute specifically provides that it shall not apply to life insurance. Appellant points to no other statute prohibiting oral contracts for insurance. Our perusal shows Ark. Stat. Ann. § 66-3212 with reference to contents of policies in general; Ark. Stat. Ann. § 66-3215 requiring officers or attorney-in-fact to execute policies; Ark. Stat. Ann. § 66-3220 requiring prompt delivery of policies after issuance; and Ark. Stat. Ann. § 66-3305 requiring an entire contract clause. Couch on Insurance 2d § 14:11 with reference to such statutes states:

> "Some courts find in standard policy laws or in statutes which require a full expression of the terms of the contract in the policy a requirement of a writing for a contract of insurance. Other authorities, however, interpret a statute regulating the content of a policy, prescribing a standard form of policy, providing for the filing of copies of policies with the insurance department, providing that the application and all other papers affecting the contract be attached thereto and that the entire contract be expressed in the policy, or regulating the manner of executing an insurance policy, including the requirements of a countersignature, as applying only to a policy which was in fact written and as not invalidating an oral contract to insure or of insurance, especially where the statute is affirmative in terms and contains no negative provisions prohibiting oral contracts of insurance. For example, a statute that insurance companies can make valid policies of insurance only by having them signed

by the president and countersigned by the secretary does not prohibit the making of a valid oral agreement to insure. Some authority takes the position that a statute which provides for the signing of policies by designated officers of the insurance company, while applicable generally in accord with its salutary purpose of preventing fraud, does not have application to preclude the making of a valid oral contract of insurance which is intended to be effective only until a formal policy may be issued."

We can find nothing in our statutes that would invalidate an oral contract such as is here involved for life insurance. Had the General Assembly intended to invalidate oral contracts for life insurance it could have done so in simple language.

Appellant also argues that under the parol evidence rule Hackett's testimony was hearsay and therefore not admissible. Appellant cites no authority and we know of no authority that prohibits a witness to an oral contract from testifying about the agreements reached.

Appellant raises a number of other issues, some having to do with the competency or incompetency of evidence, but in view of the uncontradicted evidence as to the consummation of the oral contract, the trial court's rulings thereon, even if erroneous, would become harmless.

Finally appellant contends that the trial court erred in rejecting its counterclaim for the premium. The record shows that the cashier's check for the premium was returned to a co-executor of the estate and that the co-executor was holding the check for appellant and was at all times ready and willing to deliver the same to appellant. Under the record we can find no error in the trial court's refusal to grant a money judgment by way of setoff against the amount sued for.

Affirmed together with an additional attorney's fee of $1,000.

Brown and Fogleman, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent. While there are other matters involved on this appeal that I think call for a reversal and while I do not agree with other statements in the majority opinion, I will direct my remarks to one point only, because the majority opinion turns entirely upon that point. That is its reliance upon an oral agreement for insuring the life of the deceased. If the majority opinion properly interprets and applies the pertinent section of the Arkansas Insurance Code, then the drafters wasted words when they said that the section should not apply to life insurance. The pertinent section reads:

66-3219. Binders.—(1) Binders or other contracts for temporary insurance may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable indorsements as are designated in the binder, except as superseded by the clear and express terms of the binder.

(2) No binder shall be valid beyond the issuance of the policy with respect to which it was given or beyond ninety (90) days from its effective date, whichever period is the shorter.

(3) If the policy has not been issued a binder may be extended or renewed beyond such ninety (90) days with the written approval of the Commissioner, or in accordance with such rules and regulations relative thereto as the Commissioner may promulgate.

(4) This section shall not apply to life or disability insurances. [Acts 1959, No. 148, § 286, p. 418.]

This act contains 698 sections, not counting subsections. It specifically repealed virtually every Arkansas statute on the subject of insurance. It further contained the usual general repealer as to laws in conflict. Section 1 states: "This act constitutes the Arkansas Insurance Code." There was no savings clause.

If there was any doubt about the intention of the legislature to make this code the governing law relating to insurance in Arkansas, the title to the act will quickly dispel any such thought. It reads:

## ACT 148

AN ACT to Provide a Comprehensive Revision, Consolidation and Classification of the Laws of the State of Arkansas Relating to Insurance and to the Insurance Business; to Regulate the Incorporation, Formation, and Corporate Affairs of Domestic Insurance Companies, Societies, and Associations, and the Admission of Foreign and Alien Insurance Companies, Societies, and Associations; to Provide their Rights, Powers and Immunities, and to Prescribe the Conditions on Which Insurance Companies, Societies, and Associations Organized, Existing, or Authorized under this Act may Exercise their Powers; to Provide the Rights, Powers and Immunities and to Prescribe the Conditions on which Other Persons, Firms, Corporations and Associations Engaged in an Insurance Business may Exercise their Powers; to Provide for Service of Process on Unauthorized Insurers and the Conditions for Defense of Actions Brought Against Them in this State; to Provide for Certain Powers, Rights, Obligations, and Consequences as to Insurers and Others Relative to Insurance Contracts and Matters Arising from Such Contracts; to Provide for the Imposition of Licenses and Fees and for the Disposition Thereof; to Provide for the Imposition of a Privilege Tax upon Foreign and Alien Insurance Companies and Associations and for the Allocation Thereof; to Provide for the Imposition of a Privilege Tax upon Surplus Lines Brokers; to Provide for the Imposition of a Tax with Respect to Independently Procured Insurance Coverages; to Provide for the Departmental Supervision and Regulation of the Insurance Business Within or Relative to this State; to Provide Penalties for the Violation of this Act; Fixing Effective Date of Act; to Repeal Certain Acts, and for Other Purposes.

Whenever there is a general codification of the law on any specific subject, that code supersedes any existing law.[1] This was the obvious purpose of this code. The text authority cited by the majority should not be applied to the Arkansas statutes, because the whole subject of binders or other contracts for temporary insurance is covered by Ark. Stat. Ann. § 66-3219 (Repl. 1966). Certainly the majority is not holding that a permanent contract for life insurance is not required to be in writing, and certainly that result could not be proper if not even a binder or a contract for temporary life insurance is permitted. I submit that the majority has, in effect, stricken § 286(4) from the act.

For the reasons stated, I would reverse the judgment.

I am authorized to state that Brown, J., joins in this dissent.

---

[1]See, 2 Sutherland, Statutory Construction, Third Edition, (1943), 254 et seq., §§ 3708, 3712; 50 Am. Jur. 559, Statutes, § 554; 82 C. J. S. 496 et seq., §§ 292, 293; *Chrisman* v. *Carney,* 33 Ark. 316. The South Carolina Supreme Court spoke of the effect of its Insurance Code in *Independence Ins. Co.* v. *Independent Life & Acci. I. Co.,* 218 S. C. 22, 61 S. E. 2d 399 (1950). The title and first sentence of the act and the express repeal section were similar to our act. It said:

It is manifest that by the Act of 1947 the legislature intended to wipe the slate clean of insurance laws and enact a complete code upon the subject.

\* \* \*

It is well settled by our decisions that the code as adopted is the general law and the omissions are lost.