Roxanne WALKER, Plaintiff–Appellee,

v.

JACKSON NATIONAL LIFE INSURANCE COMPANY, Defendant–Appellant.

No. 93–2760.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1994.

Decided April 6, 1994.

Richard Donovan, Little Rock, AR, argued, for appellant.

Louis Etoch, Helena, AR, argued (Louis A. Etoch and Mike J. Etoch, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and HANSEN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Jackson National Life Insurance Company ("Jackson National") appeals the district court's[1] entry of judgment on a jury verdict in favor of Roxanne Walker. We affirm.

## I. BACKGROUND

The evidence introduced at trial demonstrated that Walker had been living with Jeffrey Jackson since August of 1990, and they became engaged in July of 1991. On October 22, 1991, Walker was contacted by Earnest Brown, a soliciting agent for Jackson National. They met at Walker's residence, at which time Brown introduced himself to Jackson. During the course of their discussion, it was determined that Brown could not provide Walker with better life insurance coverage than she had available from her employer, so he began discussing

---

[1] The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

Jackson's insurance needs. Jackson indicated he wanted a policy and provided Brown with the necessary information to apply for a $100,000 term life insurance policy naming Walker as the beneficiary.

Jackson desired to pay the premiums by having them deducted from his bank. However, he lacked a checking account, which was necessary for such an arrangement, so Walker agreed to allow the premiums to be deducted from her checking account. While she was filling out the necessary paperwork, Jackson received a call on his beeper. After responding to the page, Jackson told Walker and Brown that he had to leave and asked Jackson to "take care of everything" for him. Jackson left; while Brown waited, Walker finished filling out the paperwork authorizing the automatic withdrawal of premiums from her checking account, signed Jackson's name to the insurance application, then returned the paperwork and application to Brown.

Jackson was killed in April of 1992.[2] Walker filed a claim on the insurance, but Jackson National denied the claim because Jackson had not personally signed the application for insurance. The district court denied Jackson National's motion for summary judgment, concluding that Arkansas law did not require the insured to sign the application form. The court also ruled that the application did not clearly indicate the insured had to sign the application, so the jury would not be asked to decide whether a contract existed. The jury was asked to decide whether Jackson applied for insurance and whether he authorized Walker to sign the application on his behalf. The jury answered both special interrogatories in the affirmative, and the court entered judgment in Walker's favor.

## II. DISCUSSION

### A. Statutory Requirements

Arkansas law provides that "[n]o life ... insurance contract upon an individual ...

shall be made or effectuated unless at the time of the making of the contract the individual insured ... applies therefor or has consented thereto in writing...." Ark.Code Ann. § 23–79–105 (1992).[3] The portion of the statute at issue is the part stating the insurance contract is invalid unless the insured "applies therefor or has consented thereto in writing." Id. Jackson National contends that the phrase "in writing" modifies both preceding terms; that is, whether the insured applies for or consents to insurance, he must do so in a writing bearing his signature. Walker contends that the modifying phrase "in writing" applies only when the insured "consents to" insurance and does not apply here because Jackson was found to have "applied for" the insurance.

■ In endeavoring to interpret the meaning of this statute, we note that though the statute has been discussed in a few decisions, no Arkansas court has addressed the precise issue with which we are faced.[4] Accordingly, we must predict how the Arkansas Supreme Court would decide this issue, *Havens Steel Co. v. Randolph Eng'g Co.*, 813 F.2d 186, 188 (8th Cir.1987), without giving any deference to the district court's interpretation of the statute and by making an independent review of the law. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

■ Our review of the statute and the available decisions from Arkansas courts persuades us that Walker's interpretation is correct. The statute contemplates two possibilities: the insured may either apply for *or* consent to insurance. The phrase imposing a writing requirement modifies only one side of the disjunctive, thus it only applies when an insured consents to insurance without actually applying for it. We do not believe the

2. No arrests in the homicide have been made; however, nothing in the record suggests that Walker had anything to do with the killing or is considered a suspect by the authorities.

3. The statute lists four exceptions, none of which apply here.

4. The issue was presented in *Hunt v. Pyramid Life Ins. Co.*, 21 Ark.App. 261, 732 S.W.2d 167 (1987) (en banc), but the opinion affirmed the trial court by a three to three vote. "An affirmance by an equally divided court is not entitled to precedential weight," *France v. Nelson*, 292 Ark. 219, 729 S.W.2d 161, 163 (1987), so we are unable to rely on *Hunt*.

Arkansas Legislature intended to require that applications be signed by insureds because if it had it would have clearly stated so as it did elsewhere in the statute. *See* Ark. Code Ann. 23–79–105(3) (1992) ("The application for accident insurance procured through a vending machine ... must be signed by the individual to be insured....").

Jackson National's reliance on *Constitution Life Ins. Co. v. M.D. Thompson & Son, Inc.*, 251 Ark. 784, 475 S.W.2d 165 (1972) is misplaced. There, the Arkansas Supreme Court held that the insured's personal check satisfied the writing requirement. *Id.* 475 S.W.2d at 167. However, the insured never applied for the policy in question, and the court's discussion makes clear that the court was analyzing the "consent to" prong of the statute. *Id.* That holding does not indicate that an application for insurance must also be signed by the insured.

Jackson National also contends our characterization thwarts the statute's purpose. We disagree. The statute codifies the policy against "allow[ing] one person to have insurance on the life of another without the knowledge of the latter." *Callicott v. Dixie Life & Accident Ins. Co.*, 198 Ark. 69, 127 S.W.2d 620, 622 (1939); *see also Cableton v. Gulf Life Ins. Co.*, 12 Ark.App. 257, 674 S.W.2d 951, 952 (1984). As the facts in this case demonstrate, it is conceivable that a person can apply for insurance without actually signing the application. The policy is satisfied because Jackson, having personally applied for the insurance, was aware that Walker would be the beneficiary in the event of his death. The presence of his signature would not have been critical to proving the knowledge contemplated by the statute's underlying policy, and his failure to sign the application does not frustrate the statute's purpose because there is other proof available to demonstrate that the insured applied for insurance.[5]

**B. The Existence of a Contract**

■ Jackson National requested the district court to instruct the jury to decide whether a valid contract existed based on its company policy of requiring applicants to sign the application. Having reviewed the record, we believe the district court correctly concluded that this requirement does not clearly appear anywhere on the application form. Below the signature line is a directive that the "Proposed Insured (Sign Name in Full)." This is not a clear directive that the proposed insured *personally* sign the application. *Cf. Spicer v. Colonial Penn Life Ins. Co.*, 248 Ark. 12, 449 S.W.2d 704, 705 (1970) (application form directing that insured "Sign Your Name Here" not a clear requirement that the insured personally sign the application). "In common fairness, if the company intended to attach exceptional importance to a personal signature, it should have inserted unmistakable notice to that effect in the form of application." *Id.* There being no "unmistakable notice" that a personal signature was required, there was no issue of fact for the jury to resolve, and the court properly denied Jackson National's request to have the jury decide whether a personal signature was required.

**C. Sufficiency of the Evidence**

■ Jackson National contends there was insufficient evidence to prove that Jackson authorized Walker to sign the application form on his behalf. We will not recount the testimony presented at trial; having "review[ed] the evidence at trial in the light most favorable to the jury's conclusions," *Black v. Hesse*, 869 F.2d 420, 421 (8th Cir. 1989), we conclude there was sufficient evidence to allow the jury to conclude that Jackson applied for the insurance and authorized Walker to sign the application on his behalf. Jackson National's arguments, which focus on the fact that Walker was the primary witness in her favor, are matters of credibility determinations that are left to the jury to resolve.

**III. CONCLUSION**

Section 23–79–105 of the Arkansas Statutes permits a life insurance policy to be

---

5. As noted above, the statute does require the insured's signature when insurance is procured from a vending machine. In such a situation, a signature is needed to substantiate the insured's knowledge because there will be no other available proof that the insured applied for the insurance.

issued if the insured applies for insurance and does not require that the insured personally sign the application form. The insurance application at issue did not specify that, as a condition of insurance, the insured had to personally sign the application form. Accordingly, the judgment in favor of the beneficiary, based on the jury's factual findings that the insured applied for insurance and authorized the beneficiary to sign the application form on his behalf, must be affirmed.