JUSTICE KINSER, with whom JUSTICE KOONTZ
joins, dissenting.
I would construe Code § 38.2-302(A) differently from the majority and would, therefore, answer the first certified question in the negative. I agree that the statute identifies “two alternative conditions” for making a valid life insurance contract, allowing a proposed insured either to apply for life insurance or to consent to such a contract. However, as I understand the majority’s position, a proposed insured’s oral authorization combined with “material participa *274 tion” in the application process does not constitute “applying” for the insurance contract. I disagree.[1]
The part of Code § 38.2-302(A) at issue provides that no life insurance contract is made or effectuated unless “the individual insured . . . (i) applies for insurance, or (ii) consents in writing to the insurance contract.” The statute fails to define “applies;” therefore, the term must be “given its ordinary meaning, given the context in which it is used.” Dep’t of Taxation v. Orange-Madison Coop. Farm Serv., 220 Va. 655, 658, 261 S.E.2d 532, 533-34 (1980). “The context may be examined by considering the other language used in the statute.” City of Virginia Beach v. Bd. of Supervisors of Mecklenberg County, 246 Va. 233, 236-37, 435 S.E.2d 382, 384 (1993).
Examining the language chosen by the legislature, I find it significant that the phrase “in writing” appears after the disjunctive “or” and immediately following “consents” and that the two phrases, “applies for insurance” and “consents in writing,” are separately identified by the designations “(i)” and “(ii).” As a general rule, “proper grammatical effect will be given to the arrangement of words in a sentence of a statute,” Harris v. Commonwealth, 142 Va. 620, 624, 128 S.E. 578, 579 (1925), and a presumption exists that the General Assembly understood basic rules of grammar when drafting the statute. Frere v. Commonwealth, 19 Va. App. 460, 464, 452 S.E.2d 682, 685 (1995). Fundamental rules of grammar require the placement of a phrase so as to indicate clearly what the phrase modifies. John C. Hodges et al., Harbrace College Handbook 249 (12th ed. 1994).
Applying this rule to Code § 38.2-302(A), the phrase “in writing” modifies “consents,” the word immediately preceding the phrase, and does not modify “applies.” But see Alleman v. Lincoln Nat’l Life Ins. Co., 636 F.2d 1195, 1196 (10th Cir. 1981) (holding that writing provision in Utah statute, which states that “[n]o life . . . insurance contract . . . shall be made . . . unless ... the individual insured ... in writing applies therefore [sic] or consents thereto,” modifies not only “applies” but also “consents”). By choosing not to modify “applies” with the phrase “in writing,” the General Assembly intended not to restrict the method by which an individual can apply for insurance. See Forst v. Rockingham Poultry Mktg. Coop., Inc., 222 Va. 270, 278, 279 S.E.2d 400, 404 (1981) (“When *275 the General Assembly uses two different terms in the same act, it is presumed to mean two different things.”). Moreover, when the General Assembly has intended for a proposed insured to apply for insurance in writing, it has so stated. See Code § 38.2-3737(A) (“No contract of insurance upon a debtor shall be made or effectuated unless . . . the debtor . . . applies for the insurance in writing . . . .”). Thus, the General Assembly knows what language to use when it wants to condition the making of an insurance contract upon submission of a written application.
Therefore, in my view, under the provisions of Code § 38.2-302(A), consent to an insurance contract must be in writing, but the act of applying for insurance is not confined to any particular form. In other words, the mode of applying for a life insurance contract is not limited to a written application personally signed by the proposed insured. Accord Walker v. Jackson Nat’l Life Ins. Co., 20 F.3d 923, 924-25 (8th Cir. 1994) (holding that insured can apply for insurance without signing application).[2]
While rules of grammar are not permitted to defeat the purpose of a statute, Harris, 142 Va. at 624, 128 S.E. at 579, construing “applies” to denote more than the narrow meaning of an application signed by the proposed insured does not thwart the common law principle that Code § 38.2-302(A) embodies. A proposed insured’s signature on an application form is not critical to proving that the individual applied for insurance if other facts evidence the proposed insured’s intent to apply. See Walker, 20 F.3d at 925 (finding that signature of insured on insurance application was not crucial to proving his knowledge of policy and identity of beneficiary); Crump v. Northwestern Nat’l Life Ins. Co., 236 Cal. App.2d 149, 155 (1965) (holding insured’s signature not essential where insured’s agent prepared application and insured later ratified insurance contract). In other words, if the facts show that the proposed insured acted with the purpose of obtaining life insurance, then no risk exists of “allowing one person to have insurance on the life of another without the knowledge of the latter.” Walker, 20 F.3d at 925.
In the instant case, the actions of Hilfiger’s father show that he applied for insurance as contemplated by the provisions of Code § 38.2-302(A). Because the district court granted summary judgment *276 to Transamerica, the facts and inferences must be construed in the light most favorable to Hilfiger. United States v. Leak, 123 F.3d 787, 794 (4th Cir. 1997). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (“at the summary judgment stage the judge’s function is not . . . to weigh the evidence and determine the truth of the matter”). The facts show that Hilfiger orally discussed the policy with his father and that the father verbally authorized his son to obtain the policy. As the United States Court of Appeals for the Fourth Circuit stated in its certification order, “we can infer that the insured father ‘authorized’ Hilfiger to sign for him and provided the answers which Hilfiger filled in on the application forms.” Moreover, the father underwent a medical exam during which he signed a form titled “Part II of an Application for Insurance to the Transamerica Occidental Life.” Thus, the evidence shows not only oral authorization, but also undisputed overt actions on the part of the father that not only corroborate his oral authorization but also establish his participation in the application process. This is not a case of mere oral authorization, which, as the majority observed, would render the written consent alternative superfluous.
Given these facts, I conclude that Hilfiger’s signing his father’s name as the “proposed insured” does not violate Code § 38.2-302. As the majority stated, “[Tjhe purpose of the conditions required for a valid contract of life insurance is to eliminate any doubt that the insured knew about and agreed to the issuance of the insurance contract.” That purpose is fulfilled in this case.
Accordingly, for these reasons, I dissent.[3]

 Notably, the majority states only what action is insufficient to apply for a life insurance contract and fails to delineate or define specifically the requirements necessary to apply for insurance under Code § 38.2-302(A).

 An example of a statute that plainly requires a written application signed by the insured is Mass. Gen. Laws Ch. 175, § 123 (1998). This section states that “[n]o life company shall issue any policy of life or endowment insurance . . . except upon a written application therefor signed or assented to in writing by the person to be insured . . . .”

 Because I would answer the first certified question in the negative, I need not address the remaining two questions.