LATHAM *v.* FIRST NATIONAL BANK OF FORT SMITH.

Opinion delivered November 22, 1909.

1. DEED—EFFECT UPON RIGHT TO RECEIVE RENTS.—Where property is rented at the time it is conveyed, the right to receive the rents subsequently due passes to the grantee, unless the deed reserves the right in the grantor to collect and receive the rents. (Page 319.)

2. AGENCY—DECLARATIONS OF AGENT.—The authority of an agent cannot be established by his own declarations. (Page 319.)

3. AGENCY—POWERS OF AGENT.—One who deals with an agent is bound to ascertain the nature and extent of his authority. (Page 320.)

4. APPEAL AND ERROR—PRACTICE IN CHANCERY CASES.—When a chancery cause is appealed, it will be determined upon competent evidence. (Page 320.)

Appeal from Sebastian Chancery Court; Fort Smith District; *J. Virgil Bourland,* Chancellor; reversed.

STATEMENT BY THE COURT.

On December 15, 1906, appellee loaned to W. F. Latham one thousand dollars, for which Latham executed his note, due sixty days after date. The note was not paid, and appellee brought this suit to recover the amount of the note. The complaint alleged that W. F. Latham to secure the note assigned to the bank a lease on a certain lot in the city of Fort Smith; that Mrs. Latham claimed the lease; that the tenants would pay the rents to W. F. Latham or Mrs. Latham unless restrained. The prayer was for judgment on the note, for sale of the lease, and that the rents and the proceeds of the sale of the lease be subjected to the payment of the amount found due the bank, for which judgment was asked. A temporary restraining order was issued restraining the tenants under the lease from paying the rents to W. F. Latham or Mrs. Latham.

Mrs. Latham answered the complaint, setting up among other things that she was the owner of the lot and of the lease mentioned in the complaint, that the lot was deeded to her by warranty deed from W. F. Latham, her husband, on the 5th day of October, 1905; that, if the lease was assigned to appellee as collateral security for the note, such assignment was without her knowledge or consent. She prayed that her rights to the rents under the lease be recognized, that the proceeds of the lease and the rents paid into the registry of the court be turned over to her, that the restraining order be dissolved, etc.

The proof showed that W. F. Latham deeded the lot in Fort Smith to his wife October 5, 1905. The consideration for the deed was several thousand dollars. There is no question as to the *bona fides* of the sale from Latham to his wife. He had used between four and five thousand dollars of her money, and the lot was deeded to her in consideration of this money. The deed was placed on record October 7, 1905. At the time the deed was executed there was a lease on the lot which would not expire until December 31, 1909. The deed did not contain any reservation in the grantor of the right to collect the rents under the existing lease. The deed, on the contrary, in the usual form conveyed the lot "with all the privileges, appurtenances and improvements thereupon situate, appertaining and thereunto belonging."

After the deed was executed and recorded, W. F. Latham, February 20, 1906, borrowed of appellee $1,500, for which he executed his note, and deposited with appellee the contract of lease on the lot as collateral security for the loan. This note was paid before the note in suit was executed. On December 12, 1906, W. F. Latham made application by letter for the loan in suit. He inclosed the note, and in his letter asking for the loan he says: "You have my rent contract, which you can hold as security." Appellee accepted the note and advanced him the money. W. F. Latham collected the rents from the tenants after the deed was made to Mrs. Latham, and after the note in suit was executed. As the rents accrued, W. F. Latham drew drafts on the tenants in favor of the Commercial Bank of Alexandria, La., for the amounts. The Commercial Bank sent the drafts to the American National Bank at Fort Smith for collection, and credited W. F. Latham's account with the amount collected. One witness stated the drafts were given to secure a debt due the Commercial Bank. W. F. Latham collected the rents in this way until, and including, the month of July, 1907, when the payment to him was enjoined. In a letter to appellee after suit was brought Latham, complaining of the temporary order restraining him from collecting the rents, says: "Mrs. Latham has loaned me this money to help me along."

It was alleged, and not denied, that W. F. Latham was a nonresident of the State of Arkansas, and that he owned no property in the State out of which the note in suit could be collected. Latham was in good financial condition when the deed to Mrs. Latham was executed, but has become insolvent since.

Mrs. Latham testified that the rental was collected monthly by W. F. Latham, and that the money was used for living purposes for the family. She authorized Mr. Latham to collect it. She did not know that the lease contract was assigned by Mr. Latham to secure his note to appellee. If it was so assigned, it was without her knowledge or consent. If her husband assigned the rents to the Commercial Bank of Louisiana to secure or pay money borrowed of that bank, she knew nothing of it. She did not know that her husband drew drafts on the tenants of the lot for the monthly rents, payable to the Commercial Bank of Alexandria, La.

The court rendered a decree in favor of appellee for the amount of the note and interest. The court found that to secure the payment of said note the said W. F. Latham placed in the hands of the said plaintiff a lease on the building No. 502 Garrison Avenue, Fort Smith, Arkansas. That said W. F. Latham on the 4th day of October, 1905, conveyed to said Daisy Latham, who was then and still is his wife, the said building and the ground on which it stands, but he retained the lease on said building and .the rights to collect the rents therefrom and appropriated them to his own uses, and the said Daisy Latham gave to the said W. F. Latham the rents arising from said building for his own use, and he collected the said rents and appropriated them to his own use with her consent. That the said W. F. Latham was the owner of said rents, and he had the right to pledge the same to plaintiff for the payment of said note. That, under an order made in vacation by the chancellor, the said defendants, Dave Mayo and Allen Henderson and Coffey Williams, tenants occupying said building, have paid into this court thirteen hundred thirteen and 86-100 dollars as rents on said building since the first of August, 1907.

The court directed the amount of the decree to be paid out of the funds collected as rents, and the balance after "paying the amount of the interest and costs to be paid to Winchester & Martin, the attorneys for Mrs. Latham."

Mrs. Latham appeals.

*Winchester & Martin,* for appellant.

There is no reservation whatever of the rents falling due for the leased property in the deed from W. F. Latham to appellant. The rents therefore, thereafter accruing, belonged to appellant. Jones on Landlord and Tenant, § 658; *Id.* § § 428, 670; 10 Ark. 9; 39 Ark. 383; 23 Mo. 597; 72 Mo. 612; 37 Am. Dec. 117; 35 *Id.* 234; 56 *Id.* 581; 61 *Id.* 364; 45 Ia. 670; 64 Ia. 84; 15 Ind. 152; 4 So. 752; 14 S. W. 572.

*Youmans & Youmans,* for appellee.

Appellant's testimony to the effect that the rent "was simply collected monthly by Mr. Latham and used for household purposes" is contradicted by other competent testimony and evidence going to show that it was collected by him with her con-

sent, and used for his own purposes, and it is also clear from the evidence that she exercised no control whatever over the rents. She is therefore estopped from making any claim against the bank which extended credit to her husband on the security of these rents. 50 Ark. 42; 74 Ark. 161; 84 Ark. 227; 86 Ark. 486; 36 Ark. 525.

WOOD, J., (after stating the facts). There is no evidence in the record to support the finding of the chancellor that when W. F. Latham sold the lot in Fort Smith to his wife "he retained the lease on said building and the right to collect the rents therefrom." The deed contains no such reservation. On the contrary, Mrs. Latham, by the express terms of the grant, acquired the land mentioned and "all the privileges thereunto appertaining." That the fee simple title to the land carries with it the right to its absolute dominion is axiomatic; and where the property is rented at the time it is conveyed, unless the deed reserves the right in the grantor to collect, and use the rents, these pass, as a necessary incident, with the land, to the grantee.

"Rent which does not become due till after a conveyance by the landlord goes to the grantee entire." Jones, Landlord and Tenant, § 658; *Gibbons* v. *Dillingham,* 10 Ark. 9.

Mrs. Latham testifies that "the rental was collected monthly by Mr. Latham; it was used for living purposes for our family." There is no evidence that she knew that Latham had assigned the lease contract to the appellee for any purpose.

The evidence shows that Latham had authority as her agent to collect the rents and to use same for household purposes. But it does not show that he had authority to use the rents for some other purpose. His declarations were not competent to show that he had authority to use them for some other purpose. The fact that Latham assigned the lease contract as collateral to the appellee for the note in suit does not warrant the conclusion that Mrs. Latham knew of such assignment and consented thereto. Mrs. Latham testified that she did not know of such assignment. There is no evidence, direct or circumstantial, that she did know of it. Latham had no authority over the rents except as the agent of appellee. An inspection of the records of Sebastian County would have discovered that fact.

The authority of an agent cannot be established by his own

declarations. *Carter* v. *Burnham,* 31 Ark. 212; *Holland* v. *Rogers,* 33 Ark. 251; *Chrisman* v. *Cannon,* 33 Ark. 316; *Howcott* v. *Kilbourn,* 44 Ark. 213.

A principal is not bound by the acts and declarations of an agent beyond the scope of his authority. A person dealing with an agent is bound to ascertain the nature and extent of his authority. No one has the right to trust to the mere presumption of authority, nor to the mere assumption of authority by the agent. *City Elec. St. Ry. Co.* v. *First Nat. Exch. Bank,* 62 Ark. 33, 40. These well settled principles must determine this controversy in favor of appellant.

The declarations of Latham, the agent of appellant, that he owned the lease contract, and that appellee could have same as security, were wholly incompetent as against appellee to establish the authority of Latham to use the rents belonging to Mrs. Latham, for the purposes stated, or to show that he owned the lease.

Likewise was his declaration in the letter to appellee that Mrs. Latham had loaned him this money to help him along.

The fact that W. F. Latham gave drafts for the rent to the Commercial Bank to pay or to secure the payment of his account with that bank does not prove that he was using the rent money for other than household purposes. Latham's account with the Commercial Bank may have been for money that was used by him to pay his household expenses, and, if so, the drafts to pay that account were for the purpose designated by Mrs. Latham in the payment of household expenses. But, even if these drafts were given to pay Latham's account for money used by him for some other purpose, there is no evidence that Mrs. Latham knew that the drafts were being so used.

It has been often held that where a married woman permits her husband to use her separate estate as his own, and to obtain credit on the faith that the estate so used is his own, she will not be allowed afterwards to assert her claim to the property as against her husband's creditors. *Buck* v. *Lee,* 36 Ark. 525; *Driggs* v. *Norwood,* 50 Ark. 42; *Davis* v. *Yonge,* 74 Ark. 161; *Roberts* v. *Bodman-Pettit Lumber Co.,* 84 Ark. 227; *Mitchell* v. *State,* 86 Ark. 486.

But the case at bar is differentiated sharply from the above cases by the facts. Here there is no direct evidence that Mrs. Latham assented to the use of her rents for the payment of her husband's debts, nor are there any circumstances from which such assent should be implied. The competent evidence is to the contrary. When a cause in chancery reaches this court, it must be decided on the competent evidence. *Niagara Fire Ins. Co.* v. *Boon,* 76 Ark. 156.

The decree is reversed with direction to enter a decree for Mrs. Latham for the amount of the rents, and to dismiss appellees' complaint for want of equity.