OZARK MUTUAL LIFE ASSOCIATION *v.* DILLARD.

Opinion delivered June 29, 1925.

1. INSURANCE—CANCELLATION OF POLICY—RECOVERY OF ASSESSMENTS.—Where a benefit certificate is cancelled for misstatement in the application as to the age of the insured, the assessments paid may be recovered if the misstatement was made in good faith and without fraud.

2. EVIDENCE—HEARSAY.—In an action by a beneficiary to recover assessments paid on a cancelled benefit certificate, a written statement of insured as to her age, offered by the defendant on the issue whether her age was intentionally misrepresented in the application for the certificate was properly excluded as hearsay; insured not being a party nor representing the beneficiary as his agent in making the statement.

3. INSURANCE—AUTHORITY OF AGENT.—An insurance company is not bound by statements made by an agent, unless he was authorized to make them or they were within the scope of his authority.

4. PRINCIPAL AND AGENT—APPARENT AUTHORITY OF AGENT.—Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing such authority as he appears to have by reason of the the authority which he has; such authority as a reasonably prudent person, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.

Appeal from Marion Circuit Court; *J. M. Shinn;* Judge; affirmed.

*Pipkin & Frederick,* for appellant.

*J. H. Black,* for appellee.

WOOD, J.  This is an action by the appellee against the appellant to recover assessments paid by the appellee on two policies or membership certificates issued by the appellant to Martha Baker, in which the appellee was named as beneficiary.  The appellee alleged that he had paid in premiums on the policies the sum of $220, and that the appellant cancelled the policies after such premiums had been paid and when the policies were of the value of $1,000.

The appellant's principal defense was that the appellee forfeited his rights under the policies by the non-payment of the premiums and assessments as they were due according to the terms of the contract of insurance, and, further, that appellee had perpetrated a wilful fraud upon the appellant at the time of the application for the policies by stating that the assured, Martha Baker, was fifty-nine years old, whereas she was at the time more than sixty years of age, and therefore beyond the age limit of insurance fixed by the laws of the appellant company.

The appellee testified identifying the policies about which there is no dispute.  He stated that he had kept the assessments paid on the policies until the appellant turned them down face to face.  He had been paying the assessments for something like seven years.  He had been paying on matured policies for four years.  One Mr. Van Wagner came out to appellee's place and did business with appellee's son.  He made a settlement with him and wrote him a check for $1,000.  Van Wagner said that he had investigated witness' policies and found that Mrs. Baker was older than she was listed. Witness remarked, "I reckon I will get my assessment money," and Wagner said, "Yes, sir; you will get it as soon as I get back to Mena."  It was on that occasion that witness quit paying.  Witness paid until he was turned down.  He had never asked for an assessment

that witness didn't pay. The assessments witness had paid amounted to about $220.

On cross-examination witness stated, among other things, that he was suing to recover the assessments, and not claiming under the policies at all. He further testified that he didn't know what position Wagner held with the appellant. He had been over there to settle with witness' son on a policy, and wrote out his check for $1,000. His business over there was to settle up with witness' son, and Wagner probably came to see witness too. Witness had written the company and asked if his half-sister were dead, and Wagner said he had looked her up and she wasn't dead, but found that she was over age, and he would cancel the policies. Witness had not heard from her and thought she might be dead, and so had witness' daughter to write to see if she was dead. After Wagner came over there, the conversation took place as before related by witness. Wagner said he was going to cancel the policies and would not receive any more premiums. Witness had paid every month from the time the policies were taken out up to the time the policies were canceled and had never paid any after that because Wagner said he would not receive it, and that he would send witness his assessments when he returned to the office. After Wagner left he wrote back a letter to the witness telling him to keep quiet about it—that there was some fraud in it, and that witness had better keep quiet. If Wagner had not told witness that, witness would have been paying the assessments yet.

Roy Dillard testified that he was the son of the appellee and was present when Van Wagner came and made a settlement with the appellee on a claim. At that time Wagner made a settlement with the witness, and paid witness $1,000. Witness heard the conversation between Wagner and the appellee with reference to the insurance policies that appellee held. Over the objection of appellant, Wagner told the appel-

lee that Martha Baker was too old to carry policies, and appellee said he guessed he could get his money back, and Wagner said, "Yes." He told witness that he was an agent of the company. Witness didn't know whether he was or not at the time, but found out that he was before Wagner left, as he made a settlement with witness for the company and gave witness a check for $1,000. In the conversation with witness' father, the appellee, Wagner told the appellee that he could not make any more payments; that he would turn them down and told appellee to tell them to send his assessment money in and to do it right now. Wagner said that he would send the assessment money to appellee as soon as he got back to Mena. Witness further stated that the check given him by Wagner in settlement of witness' claim against the company was paid. Two other witnesses testified for the appellee, and they corroborated substantially the testimony of the appellee and his son as to the conversation between appellee and Van Wagner.

Van Wagner testified as a witness for the appellant that he had been in the employ of the appellant in its clerical department since 1917. He was sent out occasionally to settle policy losses if it became necessary. He went to the appellee's place in 1922 to settle a loss with appellee's son, Roy Dillard, who had a policy with the company. The president, vice-president and secretary of the company told witness that they wanted him to settle the loss with Roy, and they had been getting several letters from the appellee with reference to Mrs. Martha Baker. The last letter stated that she was dead. They took it up and found Martha Baker at Casa. Witness went down to Casa to find where Martha Baker was and found her at Cotton Plant. She was getting her mail as Mrs. Adams, and not as Mrs. Baker, so while witness was over there he got to make a settlement and didn't know that Roy Dillard lived with the appellee until he got there. When he got to appellee's place, he

asked for Roy Dilliard, and the appellee came up and introduced witness to Roy. Witness then told appellee that he had been by and had seen Mrs. Baker, that appellee had been writing to the company about. Witness told appellee that he had got a statement from Mrs. Baker, and that she was very much alive. Witness finally said to appellee that he didn't come to see him, and had no business with him; that he had come to see Roy Dillard. Witness stated that he had no authority from the company to cancel the policies; that the company had not authorized the policies to be cancelled; that the board of directors only had that authority, and witness was not a member of that board.

The appellant offered to prove by this witness a statement furnished witness by Mrs. Martha Baker, written out and purporting to be duly signed by Martha Baker by her mark, dated September 8, 1923, to the effect that she was a girl at least thirteen years old at the beginning of the civil war. The court refused to allow such statement to be read to the jury, to which ruling the appellant duly excepted. The witness denied that any such conversation took place between him and the appellee as testified to by appellee and his witnesses. Witness further testified on cross-examination that when he was in the office of appellant he wrote policies; that that was about all there was to do. He had nothing to do with taking in the money. That was the duty of the secretary. Witness was not an officer of the company, but was an employee and was acting in that capacity when he went up to settle with Roy Dillard. Witness didn't answer the correspondence for the company. Witness was asked: "Do they take up settlements with you and confer with you about it?" He answered, "No, sir, they send me out with instructions and I do it." Ques.: "They took up the Roy Dillard matter with you?" Ans.: "They took it up with him and then sent me to look after it." Witness further testified that Roy Dillard had a claim against the appellant for $2,000.

Witness was acting under the instructions of appellant when he made the settlement with Roy Dillard.

Appellant asked the court to instruct the jury to return a verdict in its favor, which prayer the court refused and to which ruling the appellant duly excepted. The court, on its own motion gave to the jury two instructions, only one of which we deem it necessary to set out. No. 2 is as follows: "You are instructed that, unless you find from a preponderance of the evidence that the plaintiff, J. F. Dillard, paid all assessments due by him or Mrs. Martha Baker, to whom the policies in this case were issued, of which either of them had notice, you will return your verdict for the defendant."

The jury returned a verdict in favor of the appellee in the sum of $220, and from a judgment entered in his favor for that sum is this appeal.

1. In *DeLoach* v. *Ozark Mutual Life Association*, 148 Ark. 414, we declared the law to be that a recovery cannot be had where the certificate of insurance was obtained by actual fraud, that is, where there was a wilful purpose to deceive on the part of the insured or the applicant, but that premiums may be recovered in all other cases. Here, the court, in an instruction given at the instance of the appellant, told the jury, in effect, that, if the age of Mrs. Martha Baker, the assured, was over sixty years at date of the application for membership in the association, they should find for the appellant, unless they further found from the evidence that her age was not carelessly, wilfully, or knowingly mis-stated in the application. In other words, if Mrs. Baker was over sixty years of age at the time of her application, and it was wilfully, negligently or knowingly misstated that she was under sixty years of age, then the verdict should be in favor of the appellant. It will thus be seen that the instructions of the court were more favorable to the appellant than it was entitled to, under the doctrine announced in *DeLoach* v. *Ozark Mutual Life Association*, *supra*; *Lincoln Reserve Life Ins. Co.* v. *Smith*, 134 Ark. 245.

The law on this subject was correctly announced in the instruction No. 1 given by the court on its own motion in which the court told the jury that, if the application of Mrs. Baker was made in good faith and the first premium paid by her, and all the other premiums were paid by the appellee, Dillard, the contract was a valid one, and Dilliard would be authorized to recover, unless there was a fraud in the representation as to Mrs. Baker's age. The issue as to whether or not the certificates were issued through fraud perpetrated upon the appellant by the appellee was submitted under instructions that certainly were not prejudicial to the appellant, and of which it therefore has no right to complain.

2. The court did not err in refusing to allow the appellant to read in evidence the statement of Mrs. Martha Baker made to appellant's agent, reduced to writing and purporting to be signed by Mrs. Baker. Mrs. Baker was not a party to the action, nor is she a party in interest, and most assuredly she was not representing the appellee as his agent in making the statement. *Lincoln Reserve Life Ins. Co.* v. *Smith, supra.* Therefore, the purported statement was but the baldest hearsay, and under no rule of evidence was the same admissible. Mrs. Baker was living, and her testimony, if thought to be competent and relevant to the issue involved, could have been adduced in some of the methods authorized by the rules for the production of evidence.

3. The principal and only serious question in the case is whether or not there was any testimony to support the verdict on the issue of whether or not the appellee was entitled to recover on the alleged promise of the appellant, through its agent, Wagner, to cancel the certificates and return to the appellee the assessments or premiums that had been paid by him. This issue was submitted to the jury by the court's instruction No. 2, set out above. The phraseology of this instruction was not as clear as it should have been,

but there was only a general objection to it, and, when taken in connection with instruction No. 8 given at the instance of the appellant, it could not have confused and misled the jury. By these instructions the jury was told, in substance, that, unless Wagner was the agent of appellant and had authority to make the statements which the appellee and his witnesses attributed to him concerning the cancellation of the certificates and the return to the appellee of the assessments paid by him, and acted within the scope of such authority, then the appellant would not be bound by such statement, and the verdict should be in favor of the appellant.

These instructions, when taken together, sufficiently declare the law in conformity with many decisions of this court upon the question as to whether or not Wagner was the agent of the appellant and whether or not he had authority to enter into a contract with appellee to cancel the certificates and return the amount of the assessments which had been paid by the appellee as set up in his complaint, and whether or not he acted within the scope of his authority. See *Anderson-Tully Co. v. Gillett Lbr. Co.,* 155 Ark. 224; *Oliver Construction Co. v. Erbacker,* 150 Ark. 549, and cases there cited.

It is an exceedingly close question as to whether Wagner, the employee of the appellant, had authority to make the contract alleged. The testimony is abundant that Wagner assumed the authority to make the contract alleged, but of course the appellant was not bound by any assumption of authority by him. However, his testimony shows that he was authorized by the appellant in certain cases and under certain circumstances to make settlements for the appellant. He was out on a mission of that character, as shown by the testimony of both the appellee and the appellant, when the alleged contract was entered into upon which appellee predicates his right to recover. Wagner settled a claim with the appellee's son. The appellee's testimony tended to prove that, after this visit and alleged agreement, the

appellant did not give him any further notice of the due dates of assessments which it had done up to that time. Appellee had paid every month from the time the policies were taken out until the time of the alleged agreement with Wagner. The testimony of the secretary of the appellant directly controverts the above testimony of the appellee, but this conflict made an issue for the jury. If the appellant, after the alleged contract between appellee and Wagner in September, ceased to give the appellee notice of the date when assessments were due, which the jury had a right to find from the testimony was a fact, then this was a circumstance tending to prove that the appellant had clothed Wagner with the authority to make the contract, and that it was treating such contract as valid and binding. The circumstances as disclosed by the testimony of appellee's witnesses, and also of appellant's witnesses, were sufficient to make it an issue of fact as to whether or not the appellant had clothed Wagner with apparent authority to make the contract. This court has often approved the statement of the law as to apparent authority announced in 2 C. J. 573, as follows: "Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume, or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has: such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct would naturally suppose the agent to possess." *Pierce* v. *Fioretti,* 140 Ark. 306-313.

There is no reversible error in the record, and the judgment must therefore be affirmed. It is so ordered.