SOUTHERN BURIAL INSURANCE COMPANY *v.* BAKER.

4-5681 134 S. W. 2d 1

Opinion delivered December 11, 1939.

*Charles W. Garner,* for appellant.

*J. Everette Johnson* and *Denver L. Dudley,* for appellee.

BAKER, J. The appellant company on October 12, 1938, issued to Delia Baker a policy of insurance in the sum of $500. The appellee named herein is the beneficiary of that policy. On December 15, 1938, a little more than two months after this policy was issued, the insured died. Proof of death was made, but the insurance company denied liability. In answer to the complaint filed in this case the company pleaded that it operated a mutual assessment plan of insurance or-

ganized and existing under act 139 of the Acts of 1925; and that the policy of insurance was written without a medical examination and upon the written application of the beneficiary, Pleas A. Baker. This application showed that the insured was in good health, eligible for membership and insurance and that the statements as to the age, good health and eligibility in the application for insurance are warranties of the truthfulness thereof; that defendant relied solely upon said warranties when it issued said benefit certificate on the life of the deceased and that all of the said statements were untrue. The insurance company pleaded further that after death of the insured it made an investigation and found that the deceased died of cancer and that she had been suffering from the disease for several months before the application for insurance and that at the time the application was made she was under treatment of physicians. The company pleads further that upon finding the warranties were untrue and upon the discovery of fraud, it tendered the appellee a refund of all premiums paid, but it was refused; the tender was again made in open court. Upon the trial of the case when all the evidence had been presented the insurance company moved for a directed verdict in its favor whereby the plaintiff also asked for a verdict in his favor. The court directed the jury to return a verdict for the plaintiff in the sum of $500, but denied the prayer or motion of the appellee for a 12 per cent. penalty and attorney's fee. Both parties duly made objection and saved exceptions to the action of the court in the denial of their respective prayers. After a motion for a new trial was made and overruled, the appeal was perfected and the cross-appeal was allowed in due time.

Notwithstanding the direct appeal of the insurance company and the cross-appeal of the appellee, there is only one question presented for determination; that is, the propriety of the court's ruling in directing a verdict for the appellee. If this ruling is correct, the appellant concedes that there should have been an order allowing the penalty of 12 per cent. and fixing a reasonable attorney's fee in the case. Upon the other hand, if the

court was in error in directing a verdict for appellee, the decision of this question also determines that presented upon the cross-appeal.

While the facts in this case have not been settled by a stipulation or agreement, there is really no substantial dispute between the parties in regard thereto. The plaintiff testified that he told the agent exactly what the condition of his wife was and that he showed him a letter from the hospital where she was then receiving treatment. The letter stated that she was coming home on the 12th or 15th of the month. He explained to some extent about her physical ailments, but that she was much better, that she did not go to bed and that she was not confined continuously until about three (3) weeks before her death; she worked in the store, and that Mrs. Campbell, her neighbor, helped her some. He says that it was in September her stomach got wrong, and she got to vomiting, and it was at that time he took her to Eureka Springs. When she came home he thought she was getting along all right until three weeks before she died; "The reason I told the agent she was in good health was because I thought she was getting better. I did not read all the application, but he did, and he asked three or four questions; I signed the application in its present form; I had become seriously disturbed about my wife's health when I sent her to Eureka Springs; her stomach was bothering her and she had intestinal trouble three or four months before; had hemorrhages. After she stayed there about two or three weeks she began eating hearty and had no more stomach trouble; if I hadn't thought she was sick I would not have been paying her hospital bill and would not have sent her over there; I believe she weighed 130 pounds in August, 1938; I do not believe she fell off much in October; she gained a little while she was at Eureka; she stayed there six weeks." Without copying all he said, we may add from his evidence this statement favorable to the position he has assumed: "We thought she was going to get well; I didn't know the company required any medical examination; the company didn't have a doctor there for examination; the agent

who took the application told me the company did not require a physical examination; the policy was issued under questions he asked me and the answers I gave him; I don't remember word for word just what was talked over between me and him, and don't know whether he put the answers down as I gave them or not. I have acknowledged it as my signature and I am not denying it now." There was also testimony given by Mrs. Joe Campbell which showed that the insured had been sick for some time, but was improving.

On this matter of health and physical fitness for insurance there is no contention that the insured was at any time in good health or a fit subject for insurance either at the time the policy was written, or at the time it was delivered, or thereafter until she died. The appellee has briefed this case to support the recovery citing as authority such cases as the *Supreme Forrest Woodman Circle* v. *Sneed*, 190 Ark. 112, 77 S. W. 2d 636; *American National Insurance Co.* v. *Hale*, 172 Ark. 958, 291 S. W. 82; *Mid-Continent Life Insurance Co.* v. *Parker,* 181 Ark. 213, 25 S. W. 2d 10, and the very late case of *Callicott* v. *Dixie Life & Accident Insurance Co.,* 198 Ark. 69, 127 S. W. 2d 620. The contention is made that the knowledge of the agent of the insurer obtained while performing the duties of his agency in receiving applications and delivering policies as to the state of the insured's health is imputed to the insurer and if such knowledge did vitiate the contract in its inception according to the terms such knowledge constitutes a waiver of the provisions of the contract inconsistent with the known facts.

The authorities cited are recognized as being among those well considered announcements of principles involved which govern in all the cases wherein they are applicable. There is another case which we desire to group with the others above cited. The proof in that was to the effect that the physician who made the medical examination knew the facts in regard to the health of the insured though he did not state them correctly. In the application, the facts set out were alleged to be warranties. The court held, and properly so, that these

statements amounted to no more than representations under the conditions therein set out, and since the company had knowledge of the facts as they really existed, the beneficiary was entitled to a recovery. *Mutual Aid Union* v. *Blacknall*, 129 Ark. 450, 196 S. W. 792. It would perhaps shorten our comment to say that the defense offered and urged, in most, if not in all, of these cases, was one of fraud arising out of false statements made by the applicant for the insurance. But in practically every case of the class cited the applicant gave answers which were incorrectly written down by the agent or examining physician. They knew what the facts were, and knowledge constituted a waiver for the reason there was no actual deception.

The facts of the situation here under investigation are different. The matters upon which the insurance policy was based, found in the application were stated by the beneficiary himself not as mere matters of his opinion as he insisted upon the trial, but they were in law, warranties. We do not have to find or determine them to be such from their form or substance nor are they made such by the declaration of the beneficiary.

We have already seen that the company was organized under the act 139 of Acts of 1925. Section 14 of that act reads as follows: ''Statements, representations, and answers on the part of applicant for membership as to question of age, condition of health, and eligibility shall be construed as warranties on the part of applicant, and such applicant shall be bound thereby, and shall constitute a part consideration for issuance of the policy or certificate of membership on the part of the association. It shall be unlawful for the beneficiary, his agent or representative, under any policy or certificate issued by the association or company coming within this act, or any doctor, or undertaker, or other attendant to knowingly conceal, withhold, or misrepresent any facts concerning the health, age, or other material information as to the deceased member or policyholder because of whose death or accident claim is being made.'' However we may feel impelled to declare the law in any case wherein this statute is not involved, we fail to see in

this case either estoppel or waiver. If there is any point to § 14 of said act 139 of the Acts of 1925, we must follow the plain letter of the law and give due effect to this provision, or declare it unconstitutional and void. There is no room for construction, nor question of validity raised on this appeal. Truly, if we might say that the parties by their conduct could waive these provisions and their effect in this class of insurance, then there is no reason why the Legislature should have troubled about the enactment of this bit of legislation. If there were a declaration now of such power to waive, we would follow the lead of cases like that of the *Mutual Aid Union* v. *Blacknall, supra.*

The beneficiary in this case acknowledges full responsibility for the signed application. The manner in which he has stated the facts in his evidence as they appeared to him justify the conclusion reached by the trial court if the waiver could exist in spite of the law and in disobedience of its mandates.

Some form of assessment insurance has been in existence for a long time. The idea has always been to insure at a cheaper rate than is practiced by other organizations. Such companies that have heretofore occupied the field experienced in most instances indifferent success. The new custom may be an improvement. Under it, the applicant may not speculate. He makes a misstatement of a material fact at his peril. It cannot be gainsaid that the statements in the application were warranties. They are admittedly untrue and the insurance contract on account thereof is not enforceable. *Fidelity Mutual Life Ins. Co.* v. *Beck,* 84 Ark. 57, 104 S. W. 533, 1102.

The judgment is reversed; the cause is dismissed.