PRUDENTIAL INSURANCE COMPANY OF
AMERICA *v.* Pamela WILLIAMS

CA 84-437 689 S.W.2d 590

Court of Appeals of Arkansas
Division II
Opinion delivered May 22, 1985
[Rehearing denied June 26, 1985.*]

---

* Mayfield, J., would grant rehearing.

*Rose Law Firm, A Professional Association*, by: *Richard T. Donovan*, for appellant.

*Pickens, McLarty & Watson*, by: *James A. McLarty*, for appellee.

TOM GLAZE, Judge. The appellant insurance company appeals from a jury verdict awarding appellee benefits under a group accidental death and dismemberment policy for the loss of sight in her right eye. Under the policy, an employee must show the following three conditions before he or she may obtain benefits: (1) the employee sustained an accidental bodily injury while a covered individual; (2) the injury, directly and independently of all other causes, resulted in the loss; and (3) the loss occurred within ninety days after the injury was sustained. The group policy also contained several exclusions, one of which provided that the policy would not cover any loss which results directly or indirectly from bodily or mental infirmity or disease or medical or surgical treatment thereof.

Appellee underwent surgery on 14 September 1982 to remove a cataract on her right eye. During surgery, a hemorrhage occurred, and appellee lost complete sight in her right eye. The hemorrhage was an unexpected and unanticipated complication of the surgery. Appellant denied coverage on the basis of the above quoted conditions for benefit and the policy exclusion. On appeal, appellant raises three issues: (1) the trial court erred in failing to direct a verdict; (2) there was no substantial evidence to support the verdict of the jury; and (3) the trial court erred in not admitting the opinion testimony of the expert witness.

In 1964, appellee sustained a black eye when she was struck by her boyfriend. This injury to her right eye healed and caused her no further problem. Appellee began wearing glasses in 1975 to correct vision in both her eyes and she had no particular problem with her right eye until a traumatic cataract was diagnosed in 1981.

At trial appellant argued that the injury which appellee sustained in 1964 was the accidental bodily injury that eventually resulted in a traumatic cataract, and that during surgery to remove the cataract, appellee lost sight in her right eye. The loss which resulted from the 1964 injury would not be covered, appellant argued, because (1) the appellee was not covered at that time, (2) there were intervening causes between the time of the blow in 1964 and the loss of sight in her eye, *i.e.*, a cataract, surgery, and a hemorrhage, and (3) the loss occurred some eighteen years after the blow or injury. Appellant argued in the alternative that the accidental bodily injury was the cataract which was diagnosed in 1981. Under this 1981 injury theory, appellant contended the appellee would not meet the conditions because (1) the surgery and the hemorrhage that occurred were intervening causes between the time her cataract was diagnosed and when she lost her sight, and (2) her loss of sight occurred at least one year after her cataract was diagnosed. In addition, appellant urged that under the policy exclusion, appellee could not recover because the loss of sight in her eye resulted directly from the surgical treatment of a bodily infirmity, the cataract.

Appellee was successful in disposing of these arguments by proving that the hemorrhage was the accidental bodily injury which made her eligible for benefits. We proceed on appeal on this prevailing theory.

It is undisputed that appellee was covered under the policy when the injury (hemorrhage) occurred, and because her loss of sight was immediate, such loss was sustained within the required ninety-day period. Thus, appellee's loss clearly meets two of the three conditions required under the group policy. However, the focus of this case is on the condition not clearly met by the evidence, *viz.*, whether there was substantial evidence to support the finding that the hemorrhage which resulted in the loss of sight occurred independently of the surgery.

 Procedurally, a directed verdict is proper only when

the evidence is so insubstantial as to require that a jury verdict for the non-moving party be set aside. On appeal, we determine whether there is substantial evidence by giving the evidence, and all reasonable inferences deducible from that evidence, the highest probative value in favor of the non-moving party. *Kelly* v. *Cessna*, 282 Ark. 408, 668 S.W.2d 944 (1984). Substantial evidence has been defined as:

> 'evidence that is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force or induce the mind to pass beyond a suspicion or conjecture.' Ford on Evidence, Vol. 4 § 549, page 2760. Substantial evidence has also been defined as 'evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and the test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences.'

*Findley, Adm'x.* v. *Time Ins. Co.*, 269 Ark. 257, 259, 599 S.W.2d 736, 738 (1980) (quoting *Pickens-Bond Construction Co. et al.* v. *Case*, 266 Ark. 323, 584 S.W.2d 21 (1979)).

Appellee concedes that her case is based upon the following exchange during re-cross examination of the expert witness, Dr. Ben Lowery:

> Q. Now you say you don't think that the hemorrhage would have occurred if there had not been surgery, but really you have no way of knowing one way or the other, do you?
>
> A. No.

This is the only evidence presented by the appellee in support of the proposition that the hemorrhage, directly and independently of all other causes, resulted in the loss, and this testimony was elicited after Dr. Lowery on re-direct examination had opined that he did not believe the hemorrhage would have occurred if appellee had not been undergoing surgical treatment.

When we view this evidence in the light most favorable to the appellee and draw all reasonable inferences therefrom, we must agree with appellant that the trial court erred in denying the

motion for a directed verdict at the conclusion of the evidence. While Dr. Lowery's testimony on re-cross examination raised a question concerning whether appellee's hemorrhage might (or might not) have occurred independently of surgery, such testimony merely gave rise to two equally inconsistent inferences. Dr. Lowery simply had no way of knowing whether or not the hemorrhage would have occurred if there had not been surgery. Rather than offer anything of material certainty and precision which might compel a conclusion one way or the other, we must conclude Lowery's testimony could have raised nothing more than suspicion in the minds of the jurors.

We do not reach appellant's second and third points for reversal because we reverse and dismiss this cause upon the trial judge's failure to grant appellant's motion for a directed verdict.

Reversed and dismissed.

COOPER and CORBIN, JJ., agree.