NATIONAL SECURITY FIRE & CASUALTY
COMPANY *v.* Maxine WILLIAMS

CA 85-58                                    698 S.W.2d 811

Court of Appeals of Arkansas
Division II
Opinion delivered November 13, 1985

*McMillan, Turner & McCorkle,* by: *Edward W. McCorkle,* for appellant.

*Dowd, Harrelson & Moore,* by: *C. Wayne Dowd,* for appellee.

DONALD L. CORBIN, Judge. Appellant, National Security Fire & Casualty Company, appeals from the denial of its motion for directed verdict. Appellee, Maxine Williams, brought suit upon a fire insurance policy issued by appellant to her covering a dwelling owned by appellee and used as rental property. The policy was in the sum of $5,000 and a premium of $85 had been paid by appellee to appellant. The dwelling burned to the ground on or about July 26, 1983. As a defense appellant claimed the policy suspended coverage under a provision which provided:

> Conditions Suspending or Restricting Insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring:

(a) while the hazard is increased by any means within the control or knowledge of the insured; or

(b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days.

Appellant moved for a directed verdict at the close of the case on the basis that the proof unequivocally established that the property was vacant or unoccupied beyond a period of sixty consecutive days. Appellee responded by stating that the facts were in dispute as to whether or not the house had been reoccupied which presented a jury question. The trial court denied the motion finding that appellee had presented a sufficient question of fact which should be submitted to the jury for its determination. The jury returned a verdict for appellee in the amount of $5,000 from which appellant appeals. We affirm.

Appellee testified that the last tenant who occupied the dwelling prior to the Campbells was William Pyle. She stated that Pyle rented it from October of 1982 until he moved out. His furniture stayed in the house until the last of April or May of 1983. Appellee testified that Pyle was behind in his rent and had not paid any rent after November of 1982. Appellee's son went by the property some time in May and noticed that Pyle's furniture was still there. Appellee testified that she was contacted by Dora Campbell on the 24th or 25th of July, 1983. Campbell wanted to rent the property. Appellee agreed that Dora Campbell could go ahead and move her furniture in and start the rent the first of August, 1983. Appellee stated that she intended for the house to be occupied by the Campbells on the 25th of July, 1983.

Sue Bustin, the mother of Dora Campbell, testified that her daughter began moving in on July 25, 1983. A partial truck load consisting of a refrigerator, clothes and a few end tables was placed in the house. She stated that her daughter planned to finish moving and spend the night of the 25th in the house. The witness testified that she was certain Pyle began moving his furniture out on the 20th day of May. On May 21, she went to the property and found everything gone from the house. Sue Bustin drove to the property on July 26 and saw it burn to the ground. After returning to her home, she stated that she had a letter in the mail from appellee Maxine Williams which was postmarked July 25, 1983.

The letter informed Sue Bustin that Maxine Williams would rather not rent the house to the Campbells and asked her to tell the Campbells that she had changed her mind about renting it. Sue Bustin testified further that approximately one week after the fire appellee Maxine Williams came to her house and asked her not to mention the letter because it would keep her from drawing her insurance.

Appellee Maxine Williams testified in rebuttal that she did write the letter to Sue Bustin but denied that she told her after the fire not to mention the letter. She stated further that at the time the Campbells were moving in she had not cancelled her agreement.

Dora Campbell testified that she heard from her mother that the Pyles were moving their furniture out approximately a month or two before she started moving in. She called appellee on the 25th of July and received permission to move in immediately with rent to begin on August 1. She stated that she moved about three or four boxes of clothes and some end tables into the house on July 25. She had planned to finish moving in the following day after she returned from Hope, Arkansas. She testified that she would have spent the night in the house on the 25th if she had finished moving in and the electricity had been turned on. She had called the power company on July 25, 1983, and was informed they would be out the first thing in the morning on the 26th to turn the power on. Dora Campbell cleaned up the house on the 25th and hauled off some trash. Her husband, Bruno Campbell, testified to essentially the same facts.

Witnesses on behalf of Arkansas Power and Light Company testified that the last active date for billing purposes for power usage at the premises was January 7, 1983. Their records indicated that the meter was inactive after that date and power cut off for nonpayment of the bill. They had received a phone call from Dora Campbell on July 25 concerning the connection of electricity and power was to be connected on July 26. The power company received word of the fire and the work order was cancelled for July 26, 1983.

Appellant argues in its first assignment of error that the trial court erred in failing to grant its motion for a directed verdict. It contends that there were simply no facts in dispute that

were established by any credible evidence. Appellant states in its brief that there are two critical points concerning whether or not the property was vacant or unoccupied for sixty consecutive days. The first question to be resolved was when did the Pyle family move out and the second question to be answered was whether or not the Campbell family reoccupied the property on July 25, 1983. Both parties cite *Duckworth* v. *Peoples Indemnity Ins. Co.*, 235 Ark. 67, 357 S.W.2d 26 (1962), for the correct definitions of the terms "vacant" and "unoccupied". The Supreme Court there approved the trial court's recitation of "vacant" as meaning without inanimate objects. "Unoccupied" was defined as meaning without animate occupants. Furthermore, the Court agreed that a dwelling is "occupied" when it is in actual use by human beings, who are living in it as a place of habitation, and is "unoccupied" when it has ceased to be a customary place of habitation or abode, and no one is living or residing in it. "If, however, a dwelling is left without an occupant for an unreasonable length of time, it should be deemed unoccupied irrespective of the intention of the occupant." *Id.* at 69.

In *Farmers Fire Insurance Company* v. *Farris*, 224 Ark. 736, 276 S.W.2d 44 (1955), the Supreme Court addressed the question of whether or not the appellant was entitled to an instructed verdict on the theory that under all of the evidence the insured buildings had been "vacant or unoccupied" more than ten days at the time of the fire. The Court there held that under the facts, a question of fact was made for the jury as to whether the appellant insurance company had sustained its burden of proving that the buildings had been "vacant or unoccupied" for more than ten days before the fire and affirmed the trial court's action in refusing appellant's request for an instructed verdict. It was noted in the decision that the meaning of the words "vacant or unoccupied" was a question of law and that whether the buildings had that status at a given time was a question of fact. The Court quoted with approval the following language from other jurisdictions as follows:

> And where the undisputed facts as naturally interpreted show vacancy and unoccupancy, and consequent increase of risk, it becomes the duty of the court to declare a verdict for the insurer. *Moore v. Phoenix F. Ins. Co.*, 64 N. H. 140, 10 Am. St. Rep. 384, 6 Atl. 27.

> *But ordinarily the question, whether a building is vacant or unoccupied at the time a loss occurs, is one of fact for the jury. Schuermann v. Dwelling House Ins. Co.; Gash v. Home Ins. Co.; Phoenix Ins. Co. v. Tucker;* and *German-American Ins. Co. v. Buckstaff, supra; State v. Tuttgerding*, 8 Ohio Dec. Reprint, 72. (emphasis ours)

In determining on appeal the correctness of the trial court's action concerning a motion for directed verdict by either party, we view the evidence that is most favorable to the party against whom the verdict is sought and give it the highest probative value, taking into account all reasonable inferences deducible from it. The motion should be granted only if the evidence so viewed would be so insubstantial as to require a jury verdict for the party to be set aside. *Green* v. *Gowen*, 279 Ark. 382, 652 S.W.2d 624 (1983), citing *Pritchard* v. *Times Southwest Broadcasting, Inc.*, 277 Ark. 458, 642 S.W.2d 877 (1982).

In viewing the evidence in this light, we find that the trial court properly denied appellant's motion for directed verdict. The facts were clearly in dispute as to whether appellant had sustained its burden of proof as to whether or not the property was reoccupied by the Campbells on July 25, 1983. Accordingly, we find no merit to appellant's first assignment of error.

Appellant also contends that the trial court erred in failing to submit the case to the jury on interrogatories. In this regard it concedes that pursuant to ARCP Rule 49(a), which provides in pertinent part as follows:

> The court may require a jury to return only a general verdict which pronounces generally upon all the issues, or the court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. . . .,

the requiring of interrogatories is discretionary with the court. Appellant argues that it was only required to prove that either the property was vacant or unoccupied and not both and that the terms are not synonymous pursuant to the Supreme Court's holding in *Duckworth, supra.* Therefore, appellant contends, the only way to determine that the jury understood the clause in the

insurance policy was to submit the case on interrogatories. We do not agree. After reviewing both the instructions and appellant's proposed two interrogatories, we fail to see how the trial court abused its discretion in refusing to submit the interrogatories to the jury. Also, appellant has not specifically pointed out how the trial court abused its discretion in failing to submit its interrogatories, and we find no merit to this argument.

Affirmed.

CRACRAFT, C.J., and MAYFIELD, J., agree.