Ora Lee HUNT *v.* The PYRAMID LIFE INSURANCE COMPANY

CA 86-413                                    732 S.W.2d 167

Court of Appeals of Arkansas
En Banc
Opinion delivered June 24, 1987
[Rehearing denied July 22, 1987.]

262

*Simmon S. Smith*, for appellant.

*Cabe & Lester, A Professional Association*, for appellee.

BETH GLADDEN COULSON, Judge. Appellant raises four points for reversal of the trial judge's ruling granting appellee's motion for a directed verdict. We find none of her arguments persuasive, and we accordingly affirm the decision of the trial court.

The nature of the present case makes it necessary to examine the factual background at some length. On October 3, 1983, Bruce Jarsma, a soliciting agent for appellee, Pyramid Life Insurance Company, called upon appellant, Ora Lee Hunt, and

her husband, William Hunt, at their home in Little Rock, and persuaded them to purchase term life insurance for members of their immediate family, which included nine children.

Appellant also wanted a policy insuring the life of her sister, Dorothy Mae Jones, of Biscoe, Arkansas. It appears that while Jarsma was present appellant phoned her sister for some information which the agent used in preparing the policy. Because appellant is illiterate (although she can sign her own name) she asked her husband to sign her sister's name on the insurance application form.

The application, dated October 3, 1983, named appellant as the sole beneficiary. According to the testimony of appellant's husband, the purpose of the $50,000 policy was to provide funeral expenses in the event of Dorothy Mae Jones's death. The application form contained various questions relating to the past and present health of the proposed insured, and all were answered in the negative.

A policy was issued on October 11, 1983, with "Dorothy M. Jones" named as the insured and owner. On February 6, 1984, Dorothy Mae Jones died as a result of cancer of the pancreas. Appellee denied payment of appellant's claim based on the health of Dorothy Mae Jones. Appellant filed suit against appellee, alleging breach of contract, bad faith, fraudulent misrepresentation, and violation of the Arkansas Unfair Claims Settlement Act, Ark. Stat. Ann. § 66-3005 et seq. (Repl. 1980, Supp. 1985). Appellant also requested compensatory and punitive damages.

At trial, a hearing was conducted in chambers after appellant had rested her case. The trial judge then granted appellee's motion for a directed verdict on the first count of appellant's complaint, concerning the alleged breach of contract, but made no ruling on the remaining counts. From that decision, this appeal arises.

In her first point for reversal, appellant contends that the trial judge erred when he granted appellee's motion for a directed verdict. As a procedural matter, a directed verdict is proper only when the evidence is so insubstantial as to require that a jury verdict for the non-moving party be set aside. *Prudential Insurance Co. v. Williams*, 15 Ark. App. 94, 689 S.W.2d 590

(1985). To determine, on appeal, the correctness of the trial court's action regarding a motion for a directed verdict, we view the evidence that is most favorable to the non-moving party and give it the highest probative value, taking into account all reasonable inferences deducible from it. *National Security Fire & Casualty Co.* v. *Williams*, 16 Ark. App. 182, 698 S.W.2d 811 (1985).

■ According the highest probative value to the evidence presented by appellant, we cannot find any substantial evidence tending to establish an issue of fact in appellant's favor. The controlling law is found at Ark. Stat. Ann. § 66-3206 (Repl. 1980):

> No life or disability insurance contract upon an individual, except a contract of group life insurance or of group or blanket disability insurance, shall be made or effectuated unless at the time of the making of the contract the individual insured, being of competent legal capacity to contract, *applies therefor or has consented thereto in writing.* . . [Emphasis added.]

This court applied the statutory language to a situation in which an agent had never obtained an insured's consent or signature in *Cableton* v. *Gulf Life Insurance Co.*, 12 Ark. App. 257, 674 S.W.2d 951 (1984). We noted the public policy considerations which led to the enactment of the law codified at § 66-3206, quoting from *Callicott* v. *Dixie Life & Accident Insurance Co.*, 198 Ark. 69, 127 S.W.2d 620 (1939):

> One who takes out a policy of insurance on the life of his brother without the knowledge or consent of the latter, cannot maintain an action against the company on the policy. 14 R.C.L. 889.
>
> It is against public policy to allow one person to have insurance on the life of another without the knowledge of the latter. It is not only the general rule that the consent of the insured must be had, but that is the rule in this jurisdiction, and this case is ruled by the case of *Amer. Benefit Life Ins. Ass'n* v. *Armstrong*, 183 Ark. 47, 34 S.W.2d 1082.

In commenting on *Callicott*, we stated: "The passage of Ark.

Stat. Ann. § 66-3206 codifies this policy and cannot be circumvented." 12 Ark. App. at 259.

■ Appellant asserts that § 66-3206 and *Cableton* are inapplicable because appellee "ratified the parol agreement." However, even when the evidence is viewed most favorably to appellant, there is nothing to indicate that appellee was ever informed, by its agent or any other person, that the application had not been signed by the insured. Without such knowledge on appellee's part, it cannot be said that ratification occurred. Appellant's contention amounts to an argument that there had been a waiver of requirements by appellee, but, as *Cableton* emphatically states, the requirements of § 66-3206 "cannot be circumvented." We pointed in *Cableton* to *Southern Burial Insurance Co. v. Baker*, 199 Ark. 468, 134 S.W.2d 1 (1939), where the Arkansas Supreme Court stated its adherence to the policy of non-waiver of statutory law in the following terms:

> There is no room for construction, nor question of validity raised on this appeal. Truly, if we might say that the parties by their conduct could waive these provisions and their effect in this class of insurance, then there is no reason why the Legislature should have troubled about the enactment of this bit of legislation.

199 Ark. at 473, 134 S.W.2d at 3 quoted at 12 Ark. App. at 259, 674 S.W.2d at 952.

■ Because of the well established public policy, codified in the statutes and explained in the case law, neither the alleged oral consent of Dorothy Mae Jones nor the purported waiver of requirements of ratification by appellee is effective to negate the mandatory invalidation of life insurance policies issued without an application or consent in writing by the insured.

Appellant argues in her second point for reversal that the agent, Bruce Jarsma, had apparent authority to bind appellee to a term life insurance policy on Dorothy Mae Jones. At trial, however, appellee admitted only that Jarsma was a soliciting agent and, as such, had no authority to bind appellee to the issuance of this or any other policy.

■■ It is well settled that the insured or the beneficiary of an insurance policy has the burden of proving coverage. *Snow* v.

*Travelers Insurance Co.*, 12 Ark. App. 240, 674 S.W.2d 943 (1984). Arkansas is one of the states that makes a distinction between the authority of general and special agents of insurance companies. *Security Insurance Corp.* v. *Henley*, 19 Ark. App. 299, 720 S.W.2d 328 (1986). A general agent is ordinarily authorized to accept risks, to agree upon the terms of insurance contracts, to issue and renew policies, and to change or modify the terms of existing contracts. A soliciting agent, on the other hand, is ordinarily authorized to sell insurance, to receive applications and to forward them to the company or its general agent, to deliver the policies when issued, and to collect premiums. *Holland* v. *Interstate Fire Insurance Co.*, 229 Ark. 491, 316 S.W.2d 707 (1958).

■■ Our courts have repeatedly held that a soliciting agent is not invested with the authority to make contracts on behalf of the insurer. *American National Insurance Co.* v. *Laird*, 228 Ark. 812, 311 S.W.2d 313 (1958). Notice to a soliciting agent is not notice to the company. A soliciting agent has no authority to waive any of the policy requirements, nor can his knowledge be imputed to the company he represents. *Continental Insurance Companies* v. *Stanley*, 263 Ark. 638, 569 S.W.2d 653 (1978). *See also Jackson* v. *Prudential Insurance Co. of America*, 736 F.2d 450 (8th Cir. 1984); *Ford Life Insurance Co.* v. *Jones*, 262 Ark. 881, 563 S.W.2d 399 (1978); *Holland* v. *Interstate Fire Insurance Co., supra*; *Security Insurance Corp.* v. *Henley, supra*. The burden is on the plaintiff to show that a soliciting agent has real or apparent authority to bind his principal by contract. *Security Insurance Corp.* v. *Henley, supra*.

■ The following language, from *Latham* v. *First National Bank of Fort Smith*, 92 Ark. 315, 320, 122 S.W. 992, 993 (1909), has often been quoted by our courts in addressing the question of the authority of agents:

> A principal is not bound by the acts and declarations of an agent beyond the scope of his authority. A person dealing with an agent is bound to ascertain the nature and extent of his authority. No one has the right to trust to the mere presumption of authority, nor to the mere assumption of authority by the agent.

*See also Jackson* v. *M.F.A. Mutual Insurance Co.*, 169 F. Supp.

633 (W.D. Ark. 1958); *Dixie Life & Accident Insurance Co.* v. *Hamm*, 233 Ark. 320, 344 S.W.2d 601 (1961).

■ Appellant asserts that Jarsma had apparent authority to commit "certain acts" on behalf of appellee. The nature of apparent authority was discussed in *Mack* v. *Scott*, 230 Ark. 510, 323 S.W.2d 929 (1959):

> The rule of law appears to be well settled that "The authority of an agent must be shown by positive proof or by circumstances that justify the inference that the principal has assented to the acts of his agent. . . .Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Pierce* v. *Fioretti*, 140 Ark. 306, 215 S.W. 646. See also, *Ozark Mutual Life Association* v. *Dillard*, 169 Ark. 136, 273 S.W. 378.

230 Ark. at 514, 323 S.W.2d at 931-932.

■ Nothing in the record suggests any holding out of authority by appellee with respect to any form of authority of Jarsma to issue the policy in question or to bind appellee to issue the policy. Jarsma's actions and words in receiving the application and premium presented as evidence by appellant of his apparent authority, simply show him to have been a soliciting agent acting outside the scope of his authority. He therefore had no authority, apparent or otherwise, to bind appellee to the insurance contract on Dorothy Mae Jones.

■ Appellant's last two points are related and will be considered together. She argues that evidence of an oral agreement is admissible under conditions when fraud, deceit, or fraudulent misrepresentations are used to secure a written contract and that she presented sufficient evidence for the jury to find fraud, deceit, misrepresentation, bad faith, and breach of contract on counts II and III of her complaint. Appellant cites no authority for her argument concerning the admissibility of evidence of an oral agreement other than the inapposite comment

that knowledge on the part of the agent is imputed to the insurer, taken from an incorrect case. An argument unsupported by convincing authority will not be considered on appeal unless it is apparent without further research that it is well taken. *McIllwain* v. *Bank of Harrisburg*, 18 Ark. App. 213, 713 S.W.2d 469 (1986).

Appellant contends that there was fraud or misrepresentation on the part of the agent because of his "knowing" acceptance of an application not signed by the insured. No evidence was presented, however, to show that Jarsma, any more than appellant or her husband, knew of the statutory requirement that the insured must sign the application. In any event, the non-waivable nature of the requirement rendered the issue moot for submission to a jury. It does not appear, from our review of the record, that appellant carried her burden of proof with respect to the allegations of fraud, misrepresentation, and bad faith.

Since the requirements of Ark. Stat. Ann. § 66-3206 are non-waivable, appellee's acceptance of premiums does not, contrary to appellant's assertion, provide a basis for a finding of liability on appellee's part.

Finally, regarding appellant's argument that appellee engaged in unfair claim settlement practices, under Ark. Stat. Ann. § 66-3005 et seq. (Repl. 1980), it must be noted that, under § 66-3005(a), an insurer must be shown to have committed or performed the prohibited practices "with such frequency as to indicate a general business practice." Evidence of more than the acts alleged in this one case is required. *Aetna Casualty and Surety Co.* v. *Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1984).

Affirmed.

COOPER, JENNINGS, and MAYFIELD, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. I respectfully suggest that the majority opinion has interpreted a legislative act contrary to its intent and contrary to the interpretation of the Arkansas Supreme Court.

At the close of appellant's evidence, the trial judge granted the insurance company's motion for directed verdict on the

specific finding that the policy was issued without the written application or consent of the insured and that the policy was therefore invalid for failure to comply with the requirement of Ark. Stat. Ann. § 66-3206 (Repl. 1980). That statute reads as follows:

> Application required — Life and disability insurance. — No life or disability insurance contract upon an individual, except a contract of group life insurance or of group or blanket disability insurance, shall be made or effectuated unless at the time of the making of the contract the individual insured, being of competent legal capacity to contract, *applies therefor or has consented thereto in writing,* except in the following cases:
>
> (1) A spouse may effectuate such insurance upon the other spouse.
>
> (2) Any person having an insurable interest in the life of a minor, or any person upon whom a minor is dependent for support and maintenance, may effectuate insurance upon the life of or pertaining to such minor.
>
> (3) The application for accident insurance procured through a vending machine licensed under section 171 [§ 66-2828] must be signed by the individual to be so insured; or if the individual to be so insured does not have legal capacity to contract the application must be signed by such individual's parent, guardian, or other legally constituted representative.
>
> (4) Family policies may be issued insuring any two (2) or more members of a family on an application signed by either parent, a stepparent, or by a husband or wife. [Acts 1959, No. 148, § 273, p. 418.] (Emphasis added.)

Focusing upon the phrase "applies therefor or has consented thereto in writing," the majority has relied upon *Cableton* v. *Gulf Life Insurance Co.,* 12 Ark. App. 257, 674 S.W.2d 951 (1984), to sustain the trial court's action.

First, I think we should give careful consideration to the evidence applicable to the issue involved. The record discloses that appellant, Ora Lee Hunt, was sitting in the living room of her

house when the insurance company's agent came to her door, stated he had just paid an insurance claim in the neighborhood, and asked if appellant had insurance. She testified the agent told her that he "would find something to fit her budget" and that he eventually "wrote me and the kids up and my husband." She then told the agent that her sister, Dorothy Mae Jones, wanted appellant to "take out a policy on her." The agent said he could take care of that too, and while he was sitting in appellant's living room, she called her sister who said it was "okay." The agent then asked appellant "a lot of questions" about the sister and, after he had filled out an application for insurance, he asked appellant to sign the sister's name on it. Appellant asked if her husband could sign it and, upon the agent's assurance it would be "okay," the husband signed the sister's name on the application.

Second, we need to carefully apply the above evidence to the legislative act and to the *Cableton* decision relied upon by the majority. *Cableton* states that the act sets forth the policy of this state as demonstrated by the case of *Callicott* v. *Dixie Life & Accident Insurance Company*, 198 Ark. 69, 127 S.W.2d 620 (1939), which held that "it is against public policy to allow one person to have insurance on the life of another without the knowledge of the latter." *Cableton*, 12 Ark. App. at 259. Looking at the act, we see it really does a little more than require the person insured to have "knowledge" of the insurance. Actually, the act provides that the insurance shall not be made or effectuated unless the individual insured "applies therefor or has consented thereto in writing."

Perhaps this case should have been certified to our Supreme Court under Rule 29(1)(c), as involving the interpretation of an act of the General Assembly. However, I think it is reasonably clear that the act contemplates two situations: (1) where the individual insured "applies" for the insurance and (2) where the individual insured "has consented thereto in writing." Under the first situation, the person insured is obtaining insurance on his own life. In *Constitution Life Insurance Co.* v. *M.D. Thompson & Son, Inc.*, 251 Ark. 784, 475 S.W.2d 165 (1972), it was argued that the insured did not consent to the issuance of the policy in writing as required by Ark. Stat. Ann. § 66-3206, *supra*. The court said the insured's writing of a personal check to get a cashier's check to pay the insurance premium was a sufficient

"consent in writing" to comply with the act, but the court said the insured had also accepted the company's oral counteroffer for $10,000.00 coverage on his life, instead of the $50,000.00 applied for, and that this made an oral contract which was valid. The court reasoned "had the General Assembly intended to invalidate oral contracts for life insurance it could have done so in simple language."

It therefore seems clear that the Arkansas Supreme Court does not believe the legislature has prohibited one from making an oral contract for insurance on his own life. And, if Ark. Stat. Ann. § 66-3206 "codifies" the public policy against insuring the life of another, as *Cableton* states it does, it is clear that what the legislature intended to prevent was the insuring of the life of another *unless* the person insured "consented thereto in writing." Thus, we should hold that the evidence presented by the appellant in this case, when considered in the light most favorable to her, was sufficient to present a question of fact on the issue of whether the insured, Dorothy Mae Jones, orally applied for the insurance on her life, as distinguished from only consenting to the issuance of the policy.

However, even if it is held that Ark. Stat. Ann. § 66-3206 requires a writing by the insured (whether considered an application or consent), the evidence presented by the appellant made an issue of fact in that regard. The *Constitution Life Insurance Co. v. M.D. Thompson & Son, Inc.*, case, *supra*, makes it clear that there only has to be a substantial compliance with the writing requirement. Here, we have a written application to which the insured's name was signed by her brother-in-law. If this was authorized by the insured, I think she has made a written application.

In the Missouri case of *Sells v. Fireside Life Ass'n*, 66 S.W.2d 955 (Mo. App. 1934), it was contended that the policy would not have been issued if the company had known that the wife had signed her husband's name to the application without his authority or knowledge. There was evidence that he was "willing to take out the insurance," and that he knew his wife "was going to fill out the application." The court held that this evidence made an issue of fact for the jury "insofar as the signing of the application" was concerned. That holding was later referred to

with approval by the Missouri Supreme Court, *see Bryne* v. *Prudential Insurance Company of America*, 88 S.W.2d 344 (Mo. 1935). While the case was not involved with a *statutory* requirement for an application in writing, it certainly supports the proposition that one can make a written application for insurance by authorizing another to sign the insured's name for him.

I believe the trial court erred in granting the insurance company's motion for directed verdict; therefore, I dissent from the majority opinion in this case.

COOPER and JENNINGS, JJ., join in this dissent.