The Honorable Bill Williams, Chairman Benton County Election Committee
105 S.E. Executive Drive Bentonville, Arkansas 72712-1481
Dear Mr. Williams:
I am writing in response to your request for an opinion on several questions that I will paraphrase as follows:
 1. What is the meaning of the term "domicile" as it is used in A.C.A. 7-5-201, particularly in the instance when part of a homeowner's property lies in an area to be annexed but the property owner's home lies outside the area to be annexed?
 2. Is a voter eligible to vote as a resident of a city if the city's boundary line passes through the physical structure of a voter's residence?
By way of factual background, you report the following:
 Because of the questions raised about eligibility, voters in both instances have been required to cast provisional ballots. It does not appear that either vote, or the sum of these votes[,] will change the outcome of the election.
RESPONSE
With respect to your first question, if a voter's home lies in one district and the curtilage lies partly in another, regardless of whether an annexation is planned or has occurred, I believe the property owner is obliged to vote in the district in *Page 2 
which his residence is located. I have found no authority addressing your second question. Although it would seem logical that an individual whose home structure straddles two districts might choose the district in which he will vote, no provision of law declares as much. Legislative clarification is warranted.
Question 1: What is the meaning of the term "domicile" as itis used in A.C.A. 7-5-201, particularly in the instance when part ofa homeowner's property lies in an area to be annexed but theproperty owner's home lies outside the area to be annexed?
In my opinion, under the circumstances you have described, for purposes of voting, the district in which the individual's home is located will be his "domicile and his "voting residence."
As your question reflects, the relevant inquiry is the meaning of the term "domicile" as used in A.C.A. § 7-5-201(b), which provides in pertinent part:
 "Voting residence" shall be a voter's domicile and shall be governed by the following provisions:
 (1) The domicile of a person is that place in which his or her habitation is fixed to which he or she has the intention to return whenever he or she is absent[.]
You remark in your question as submitted that "[t]he problem arises that `place' is not clearly defined as the structure or the structure and curtilage." At issue, then, is whether a voter is restricted to voting in the district in which his home is located or whether he might alternatively be entitled to vote in an adjoining district in which he owns the curtilage surrounding his home.
Despite the fact that neither the courts nor this office appear to have addressed the issue of a voter's eligibility to vote when his property's curtilage, whether or not as a result of annexation, lies in two voting districts, I believe a reviewing court would almost certainly conclude that the voter is restricted to voting in the district in which his home is located. In conducting a textual analysis of subsection (b)(1), I am struck by the fact that the term "place" is immediately modified by the phrase "in which his or herhabitation is fixed . . ." (emphasis added). Logically, if the term "habitation" should be restrictively read as denoting only the voter's abode, *Page 3 
the terms "place" and "domicile" as used in this statute should be likewise restricted for purposes of determining an individual's "voting residence."
The term "habitation" is nearly consistently used in both the Code and case law to designate an actual structure inhabited by one or more individuals. With respect to the Code, see, e.g., A.C.A. §§ 5-2-601(3) ("`Dwelling means an enclosed space that is used or intended to uses as a human habitation, home, or residence. . . ."); 14-54-903(4) (defining an "unsafe and vacant structure" as "not fit for human habitation"); 18-16-111 (defining an "unoccupied" manufactured or mobile home as having "ceased to be a customary place of habitation or abode and no person is living or residing in it"); 18-17-301 (defining "building and housing codes" as comprising laws and regulations regarding "fitness for habitation . . . of any premises or dwelling unit"); 20-27-602 (defining "dwelling" as meaning "a structure, all or part of which is designed or used for or in connection with human habitation. . . ." and "dwelling unit" as "any room, group of rooms, or other interior area of a structure designed or used for human habitation"); but see
A.C.A. § 17-15-102 (defining the "practice of architecture" as meaning "the provision of, or offering to provide" services "in connection with the design and construction, enlargement, or alteration of a building or group of buildings, and the space within and surrounding such buildings, which is designed for human occupancy or habitation") . With respect to pertinent case law,see Hopes v. State,294 Ark. 319, 322 742 S.W.2d 561 (1988) ("In David v. State,286 Ark. 205, 691 S.W.2d 133 (1985), we rejected the argument that the word `dwelling' in our self-defense statute included the curtilage. We said the statute `. . . defines "dwelling" as an enclosed space that is used or intended to be used, on a temporary or permanent basis, as a human habitation, home or residence'");Duckworth v. Peoples Indemnity Ins. Co.,235 Ark. 67, 68, 357 S.W.2d 26 (1962) (defining a "dwelling" as "`occupied' when it is in actual use by human beings, who are living in it as a place of habitation"); accord National Security Fireand Casualty Co. v. Williams,16 Ark. App. 182, 186, 698 S.W.2d 811 (1985).
Given the authorities just recited, I believe a voter's "domicile" and "voting residence" lie in the district in which his home is located.
Question 2: Is a voter eligible to vote as a resident of acity if the city's boundary line passes through the physicalstructure of a voter's residence? *Page 4 
I have found no authority that addresses this question. Although it seems logical that a voter under these circumstances might elect the district in which he intends to vote, no provision of law declares as much. As an executive agency, this office is authorized to opine as to the effect of existing laws but not to make laws. Accordingly, given the Code and the courts' silence on this issue, I can do no more than opine that legislative clarification is warranted.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General *Page 1